THE STATE *ex rel.* MAGGARD V. POND *et al., Judges of the County Court of Grundy County, Appellants.*

1. **Constitution**: STATUTE, WHEN THE COURTS WILL HOLD UNCONSTITUTIONAL. The right of the judiciary to declare a statute void, and thereby to arrest its execution, is one which, in the opinion of all courts, is coupled with responsibilities so grave that it is never to be exercised except in a very clear case.

2. **Local Option Act**: GENERAL LAW. The act of the legislature, approved April 5, 1887 (Acts, p. 177), and known as the "Local Option Act," applies to all the counties in the state as a class, and to all incorporated cities or towns as a class which have a population of twenty-five hundred, or more, inhabitants, and is, therefore, not a special or local law, but is a general one.

3. ———: LAW TAKING EFFECT ON HAPPENING OF A CONTINGENCY. While the rule that the legislature is alone invested with the power to make laws, and cannot delegate its authority to the people, does not admit of question or doubt, yet another rule is as firmly established, viz., that the legislature may enact a law to take effect, or go into operation, on the happening of a future event or contingency, and such contingency may be a vote of the people.

4. ———: ———. While the local option act provides that any county, or town, or city of the class named, may, by a majority vote, place such county, town, or city, under the operation of the law, it does not refer to them the question of passing a law. The legislature had already done this, and only called upon them to decide by a vote whether they would accept the provisions of a law regularly enacted by both houses of the General Assembly and approved by the Governor.

5. ———: ———. It is the law which authorizes the vote to be taken, and when taken, the law, and not the vote, declares the result that shall follow the vote. The vote is the means provided to ascertain the will of the people, not as to the enactment of the law, but whether intoxicating liquors shall be sold in their midst. If the majority vote against the sale, the law, and not the vote, declares it shall not be sold. The vote springs from the law, and not the law from the vote.

6. ———: LEGISLATURE: CONSTITUTION. The legislature, in the exercise of its police power, had the authority to pass the local option act.

The State ex rel. Maggard v. Pond.

7. ——— : ——— : ———. Said act is not unconstitutional as being a delegation of legislative power to the people voting on its adoption.

8. ——— : ——— : ———. The act is not unconstitutional for the reason that it may go into operation in one town or county, and operate as a repeal of the dram-shop law therein, and that in consequence of this a person can be punished in one county for selling liquor and not in another.

9. **Legislature** : REPEAL OF LAWS. The power of the legislature to repeal laws is as broad as its power to make them, and if, in the exercise of its power to pass a law, it at the same time repeals one, such repeal cannot be made the test to try the validity of the law passed.

10. **Local Option Act**: SECTION 9, CONSTITUTIONALITY OF, If it be conceded that section 9 of the act is void, in that it prescribes a greater punishment than is prescribed for a violation of the dram-shop law, a question not now decided, that does not render the whole act void, it being well settled that a law may well stand so far as it is constitutional, although it may contain unconstitutional provisions.

11. **Local Option Act Constitutional.** The duty of the court is to declare what the law is, not to make it, or decide what it ought to be. The latter is a responsibility resting upon the legislature, and following the decisions of this court on the validity of acts similar in principle to the one under consideration, and the decided weight of authority, the local option act of 1887 is held to be constitutional and valid.

*Per Sherwood, J., dissenting.*

1. **Local Option Act** : UNCONSTITUTIONAL. The local option act is unconstitutional because it was incomplete and without sanction when it left the hands of the legislature, and was, therefore, a delegation of legislative power.

2. ——— : ———. It is unconstitutional because it suspends the operation of general laws in particular localities.

3. ——— : ———. It is unconstitutional because it is a local or special law, and was not passed as provided in the constitution in respect to such laws.

4. ——— : ———. It is unconstitutional because it operates as a partial repeal of a general law, and thereby converts the general law into a local or special one.

The State ex rel. Maggard v. Pond.

5. ———— : ————. It is unconstitutional because it is an irrepealable law, and it is apparent from the law itself, and from its legislative and current history, that it would not have been passed but as a whole, and but for such irrepealable clause.

6. ———— : ————. It is unconstitutional because it varies the punishment inflicted for a crime against the state by a vote of the majority of the people of particular localities.

7. ———— : ————. It is unconstitutional because it denies to citizens of certain localities in the state "the equal protection of the laws," in violation of section 1 of the fourteenth amendment to the federal constitution.

8. ———— : ————. It is unconstitutional because it violates section 53, article 4, of the state constitution, which forbids the legislature to regulate, by a local or special law, the affairs of counties, cities, etc., or to change the charters of cities.

9. ———— : ————. It is also unconstitutional because a general law could have been passed in lieu of it.

*Appeal from Grundy Circuit Court.*—HON. G. D. BURGESS, Judge.

REVERSED.

*R. A. DeBolt, P. C. Stepp, Geo. Hall, A. G. Knight, Luther Collier, O. M. Shanklin* and *A. H. Burkholder* for appellants.

(1) The demurrer admits the facts set up and pleaded in the answer or return of defendants to the alternative writ of mandamus. *McKenzie v. Matthews,* 59 Mo. 99; *Plant Seed Co. v. Michel Seed Co.,* 23 Mo. App. 579; *State to use v. Finn,* 19 Mo. App. 560. (2) While it is conceded that the legislators cannot divest themselves of the responsibility of enacting laws by a reference of the question of their passage to their constituents, it is equally well settled that a law may be passed by the legislature to take effect on the happening of a future event or contingency. *State ex rel. v. Wilcox,* 45 Mo. 465; *Lammert v. Lidwell,* 62 Mo. 191; Cooley's Const. Lim. [3 Ed.] 117, 123-124; *City v. Alexan-*

*der*, 23 Mo. 483. (3) And it makes no difference what the nature of the contingency is, so that it be a moral and legal one, not opposed to sound policy. Such contingency is a vote of a majority of the people immediately interested or affected. *State v. Parker*, 26 Vt. 357; *Smith v. Janesville*, 26 Wis. 291; *State ex rel. v. O'Neill*, 24 Wis. 149; *State v. Noyes*, 10 Fost. [N. H.] 293; *Hobart v. Supervisor*, 17 Cal. 32–33; *Locke's Appeal*, 13 Am. Rep. 719–720; *Dome v. Wilcox, supra; St. Louis v. Alexander, supra; Township Organization Law*, 55 Mo. 295; *State ex rel. v. Mayor St. Joseph*, 37 Mo. 270; *State v. Binder*, 38 Mo. 450; *State v. Winkelmeier*, 35 Mo. 103. (4) Upon principle, it makes no difference whether the majority is expressed by ballot at an election, or in the form of a petition or certificate. It is for the legislature to prescribe the mode in which it shall be done. *State ex rel. v. Ct. Com. Pleas*, 13 Am. Rep. 424. (5) The state has the right, under the exercise of its police power, to license or prohibit altogether the sale of intoxicating liquors, or to confer such authority on the local authorities of incorporated towns or cities. *Trall v. Hudson*, 78 Mo. 302; *St. Louis v. Fitz*, 53 Mo. 585; *Spitler v. Young*, 63 Mo. 44; *State v. Binder*, 38 Mo. 450; *Inhabitants v. Fox*, 84 Mo. 59; Cooley on Const. Lim. 123–4, and note 1; *State v. Ct. Com. Pleas*, 13 Am. Rep. [N. J.] 425; *Commonwealth v. Bennett*, 108 Mass. 27; *State v. Simonds*, 3 Mo. 414. (6) By its charter, under which it was incorporated, such police powers were conferred on the town of Trenton. See Powers of Council, sect. 1, art. 3, par. 9; Laws of Mo., 1872, p. 482. Assuming, then, the right of the legislature to confer such powers upon cities and towns, can it be seriously contended that the legislature may not confer the power to adopt, by a vote of the people within such municipalities, a law drawn up and regularly enacted by that body? 3 Cooley's Const. Lim. 123–124, and

note ; *State v. Noyes,* 10 Fost. 293 ; *Bank v. Brown,* 26
N. Y. 467 ; *People v. Salomon,* 51 Ill. 37 ; *People v.
Reynolds,* 5 Gil. 1 ; *Alcorn v. Hill,* 38 Miss. 652 ; *Attorney Gen'l v. O'Neal,* 24 Wis. 155.   (7) But if this law
be construed as an act authorizing towns by a majority
vote to prohibit the sale of intoxicating liquors, it may
still be supported under the power of police regulations.
*State ex rel. v. Ct. Com. Pleas,* 13 Am. Rep. 425 ; *License
Cases,* 5 How. [U. S.] 589 ; 3 Cooley's Const. Lim. 583 ;
*State v. Donehey,* 8 Ia. 396 ; *OneHause v. State,* 4 Green
[Iowa] 172.   (8) Nor is the constitutionality of the act
affected for the reason that it declares that any person
violating its provisions shall be deemed guilty of a misdemeanor, and fixes a penalty therefor.   *State v. Ct.
Com. Pleas,* 13 Am. Rep. [N. J.] 422 ; *Locke's Appeal,*
13 Am. Rep. [Pa.] 716 ; *State v. Wilcox,* 19 Am. Rep.
[Conn.] 536 ; *Fell v. State,* 20 Am. Rep. [Md.] 83 ; *Commonwealth v. Weller,* 29 Am. Rep. [Ky.] 408 ; *State v.
Cook,* 31 Am. Rep. [Minn.] 344 ; *Boyd v. Bryant,* 37
Am. Rep. [Ark.] 7 ; *Santo v. State,* 2 Ia. 165 ; *Caldwell
v. Barrett,* 73 Geo. 604.   (9) A law will not be declared
unconstitutional, unless its invalidity clearly appears.
*Stephens v. Bank,* 43 Mo. 390 ; *State ex rel. v. Railroad,*
48 Mo. 468 ; *State v. Able,* 65 Mo. 362 ; *State ex rel. v.
Laughlin,* 75 Mo. 149 ; *Ewing v. Hoblitzelle,* 85 Mo. 70 ;
*Phillips v. Railroad,* 86 Mo. 540 ; *Kelly v. Meeks,* 87
Mo. 400 ; *State v. Addington,* 77 Mo. 110.   (10) The law
under consideration is not a special law, for " it is a settled construction of similar constitutional provisions
that a legislative act which applies to and embraces all
of a class of persons who are, or may come into, like
situations and circumstances, is not partial."   *Phillips
v. Railroad,* 86 Mo. 540 ; *Humes v. Railroad,* 82 Mo.
221 ; *Mayor v. Dearmon,* 2 Snead, 104 ; *Davis v. State,*
3 Lea, 379 ; *Snyder v. Warford,* 11 Mo. 517 ; *State ex
rel. v. Tolle,* 71 Mo. 650.   (11) Acts similar to the one
here involved have elsewhere been held constitutional.

*State ex rel. v. Ct. Com. Pleas*, 13 Am. Rep. [N. J.] 422; *State v. Wilcox*, 19 Am. Rep. [Conn.] 538; *Commonwealth v. Bennett*, 108 Mass. 27; *Commonwealth v. Dean*, 110 Mass. 357; *Fell v. State*, 20 Am. Rep. 83, 85; *State v. Cooke*, 31 Am. Rep. [Minn.] 344; *Boyd v. Bryant*, 37 Am. Rep. [Ark.] 6; *Erlinger v. Boneau*, 51 Ill. 94; *People v. Salomon*, 51 Ill. 37, 53; *People v. Reynolds*, 5 Gilm. 1; *Santo v. State*, 2 Ia. 206; *Bank v. Brown*, 26 N. Y. 467; *Railroad v. Com'rs*, 1 Ohio St. 77; *Hobart v. Supervisors*, 17 Cal. 32; *People v. Nalley*, 49 Cal. 478; *Bull v. Reed*, 13 Gratt. [Va.] 78; *Gloversville v. Howell*, 70 N. Y. 290; *Groesch v. State*, 42 Ind. 547; *Bancroft v. Dumas*, 21 Vt. 456; *State v. Parker*, 26 Vt. 357; *Smith v. Jaynesville*, 26 Wis. 291; *State v. Noyes*, 10 Fost. [N. H.] 279; *Hill v. Mayor*, 72 Ga. 314; *Caldwell v. Barnett*, 73 Ga. 604; *St. Louis v. Alexander*, 23 Mo. 483; *State ex rel. v. Wilcox*, 45 Mo. 458; *Township Organization Law*, 55 Mo. 295; *State v. Winkelmeier*, 35 Mo. 103; *State ex rel. v. Pennock*, 37 Mo. 270.

*Stephen Peery, E. M. Harber* and *J. H. Shanklin* for respondent.

(1) The act in question is not a general law of the state, but in effect it is local and within the limitations of legislative power prescribed by our constitution. Const., art. 4, sec. 53. (2) No local law can be enacted when a general law can be made applicable, and whether a general law could have been made applicable, is a judicial question, and is not left to legislative judgment or discretion. Const., art. 4, sec. 53. (3) There can be no question that a general law could have been made applicable to the subject-matter of this act. (4) If this law has any binding force in the counties or cities where a majority vote "against the sale of intoxicating liquors," it has such force locally by the repeal or partial

repeal of several general statutes, and is, therefore, expressly prohibited by the last paragraph of the section of the constitution referred to, which says, "Nor shall the General Assembly indirectly enact such special or local law by the partial repeal of a general law." (5) The enactment, if a law, is either general or local and special. A general law or act is defined to be, "An act of the legislature which regards the whole community; a universal rule; of which the courts of law are bound to take notice judicially and *ex officio*." 1 Burrill's Law Dictionary, 681; 1 Blackstone's Com., 85-86. This act has no such general application. (6) The act adds new sections to our criminal code—declares new offences and prescribes new and harsher punishments, which can never be imposed, except in those counties or cities of over twenty-five hundred inhabitants, where a majority of the qualified voters vote "against the sale of intoxicating liquors." Acts 1887, pp. 181-2, secs. 6 and 9. We understand the rule to be that a law declaring an offence or providing a punishment, or repealing an existing law which depends for its vital force upon the consent or approval of any person or body of persons, is clearly unconstitutional. *City v. Alexander*, 23 Mo. 514. (7) The act necessarily repeals or suspends existing laws, and such repeal or suspension is limited to those counties or cities where a majority of the qualified voters vote "against the sale of intoxicating liquors." (8) While it may be admitted that repeals by implication are not favored by the law, and that a later statute, which is general and affirmative does not repeal a former one which is particular, unless negative words are used, or unless the two acts are irreconcilably inconsistent, yet we apprehend that no one will assert that the act under examination, if it has any binding force in those counties and cities, voting "against the sale," etc., does not repeal or suspend within the county or city so voting, the dram-shop law,

commonly called the Downing law, and the law in respect to merchants, as well as all laws affixing penalties for the sale of intoxicating liquors, for this act is irreconcilably inconsistent with them all. (9) The Downing law and the law in relation to merchants' license are in force in Chariton county—they are repealed or suspended and not in force in Daviess. By what power was this repeal or suspension effected? Certainly not by a general statute passed by the General Assembly. The qualified voters of Daviess county have accomplished the work of repeal, and it but remains to determine whether they had the constitutional power to do so. (10) The provisions of the act and the manner provided for putting it in force, constitute a delegation of legislative power to the qualified voters of the counties and cities to whom it may be referred by petition. This examination does not involve the principle of local option, which has been a prominent and unquestioned feature of our dram-shop laws since 1851. The question is not whether local option is constitutional, for that is unquestioned, but whether this particular act is constitutional. *State v. Fields*, 17 Mo. 533; *State ex rel v. Wilcox*, 45 Mo. 461; *Lammert v. Lidwell*, 62 Mo. 190–4; *City v. Alexander*, 23 Mo. 514; *State v. Scott*, 17 Mo. 525; Cooley on Const. Lim. [3 Ed.] 116; *Rice v. Foster*, 4 Harr. 479; *Parker v. Commonwealth*, 6 Pa. St. 507; *People v. Collins*, 3 Mich. 416; *Maize v. State*, 4 Ind. 342; *Meshmeier v. State*, 11 Ind. 482; *Barto v. Himrod*, 4 Seld. (8 N. Y.) 483; *Bank v. Village of Rome*, 18 N. Y. 39; *Bank v. Brown*, 26 N. Y. 472; *Santo v. State*, 2 Ia. 203; *Geebrick v. State*, 5 Ia. 491; *State v. Weir*, 33 Ia. 134; *State v. Bencke*, 9 Ia. 203; *Honglston v. Austin*, 47 Cal. 646; *Ex parte Wall*, 48 Cal. 279; *State v. Swisher*, 17 Tex. 441; *Robertson v. State*, 5 Tex. App. 155. (11) Our constitution provides that no law passed by the General Assembly, except the general appropriation act, shall take effect until ninety days after adjournment,

unless in cases of emergency, etc. Const., art. 4, sec. 36. Our statutes provide that all laws, except the general appropriation acts, and acts, passed with the emergency clause, shall take effect ninety days after adjournment. R. S., sec. 3149. This is a mere general statutory provision which may be repealed at any time by the General Assembly, and we submit that the General Assembly have, unquestionably, the power to provide that any particular act shall take effect at any time after the expiration of the ninety days prescribed by the constitution. The statute under examination provided that "if a majority of the votes cast at such election be against the sale of intoxicating liquors, the court or municipal body ordering such election shall publish the result of such election once a week for four consecutive weeks * * * and the provisions of this act shall take effect and be in force from and after the date of the last insertion of the publication last above referred to." Sess. Acts, 1887, p. 181, sec. 5. Thus it will be found that the taking effect of the provisions of the act is made to depend, first, upon a majority vote; and, second, upon the publication of the result, and that by its title and upon its face it does not have or purport to have any vitality or binding force anywhere, until the two conditions have been complied with.

*Johnston & Craig* and *W. W. Ramsay* also for respondent.

(1) Under our form of state government the law-making power is vested by the constitution in a legislature consisting of a Senate and House of Representatives, and as a rule the power to make laws cannot be delegated by the legislature to the people or any other authority. *State v. Weir*, 33 Iowa, 134; *Maize v. State*, 4 Ind. 342; *State v. Parker*, 26 Vt. 257; *Rice v. Foster*, 4 Harr. 479; *Parker v. Commonwealth*, 6 Barr, 507; *Santo v. State*, 2

Iowa, 168; *Barto v. Himrod*, 4 Seld. 483; *People v. Collins*, 3 Mich. 343; *Meshmeir v. State*, 11 Ind. 482; *State v. Swisher*, 17 Tex. 441; *People v. Stout*, 23 Barb. 338; *State v. Copeland*, 3 R. I. 33; *Ex parte Wall*, 48 Cal. 279; *State v. Field*, 17 Mo. 529; *State ex rel. v. Wilcox*, 45 Mo. 458; *Lammert v. Lidwell*, 62 Mo. 188; Sedg. Stat. and Const. Law, 165; Cooley's Const. Lim. (2 Ed.) *116 and *117, *et seq.; Thorn v. Cramer*, 15 Barb. 112; *Locke's Appeal*, 72 Pa. St. 491. (2) We insist that the act in controversy in this case is unconstitutional and void, because it is an attempted delegation of the law-making power to the people in contravention of the rule. Cooley's Const. Lim. (2 Ed.) 117–18; *Locke's Appeal*, 72 Pa. St. 461. (3) If a law shall be made to depend for its taking effect as a law upon the popular will, then it is no law, and is violative of the rule that the law must be a complete one when it leaves the legislative hands. *Santo v. State*, 2 Iowa, 165; *Rice v. Foster*, 4 Harr. (Del.) 479; *State v. Wier*, 33 Iowa, 134; *Lammert v. Lidwell*, 62 Mo. 188; *Ex parte Wall*, 48 Cal. 279; *Maize v. State*, 4 Ind. 342. (4) The objection we urge is, not that a local option act may not be passed at all—for we maintain that the Downing act was purely a local option act—but our contention is that this act is a submission to the popular will to say whether it shall ever become a law for any purpose. (5) We contend further that the act is obnoxious to the objection that it violates section 53, article 4, of our constitution. "The General Assembly shall not pass any local or special law regulating the affairs of counties, cities," etc. "And in all cases where a general law can be made applicable," etc. (6) Section 7 of said act is unconstitutional in this, it empowers the people in any county, city, or town who have adopted it, at the end of four years, to suspend or repeal the act, by a proceeding similar to that of its adoption. Thus, in effect, conferring on the people the same power that was attempted to be conferred by the act of March 3,

The State ex rel. Maggard v. Pond.

1851, on county courts to suspend the operation of the general road law in their respective counties, which law was held void, in *State v. Field*, 17 Mo. 529. (7) Nor is the residue of the act constitutional, it not clearly appearing that the legislature would have submitted, or the people have passed, the act without the provisions contained in said section. *Lynch v. Steamer*, 27 Wis. 72; *Slawson v. City of Racine*, 13 Wis. 444; *Slinger v. Hamernan*, 38 Wis. 505; *Warren v. Mayor*, 2 Gray, 84; *Houston v. Commissioners*, 5 Ohio St. 497; *Trice v. State*, 26 Ala. 165. (8) The decisions in this state are opposed to the constitutionality of the act in question.

*F. S. Heffernan* also for respondent.

(1) No person can be deprived of his property without due process of law. Const., art. 2, sec. 30. (2) The legislative power, subject to the limitations herein set forth, shall be vested in a Senate and House of Representatives. Const, of Mo., art. 4, sec. 1; *Lammert v. Lidwell*, 62 Mo. 188. (3) No law passed by the General Assembly, except general appropriation acts, shall take effect or go into force until ninety days after the adjournment of the session at which it was enacted. Const. of Mo., art. 4, sec. 36. (4) The General Assembly shall not pass any local or special law regulating the affairs of counties, cities, etc., nor shall the General Assembly indirectly enact such special or local laws by the partial repeal of a general law. Const. of Mo., art. 4, sec. 53; *State ex rel. v. Hermann*, 75 Mo. 340; *Kincheloe v. Priest*, 89 Mo. 240; *In re Jilz*, 3 Mo. App. 243; *State v. King*, 74 Mo. 622-624. (5) The local option act (Laws of 1887, p. 179) derives no force nor vitality from the enactment by which the legislature attempted to delegate the trust to the voters in such localities in the state who desire such local law in their government, and hence is unconstitutional and void. *State v. Field*, 17 Mo. 529;

*Lammert v. Lidwell*, 62 Mo. 188. (6) The legislature cannot delegate to the people power to enact new laws, or to repeal existing laws which affect the property or bind the political rights of the citizens of the state. Cooley's Const. Lim. 116, 117; *Barto v. Himrod*, 8 N. Y. 483; *Johnson v. Rich*, 15 Barb. 68; *Bradley v. Baxter*, 15 Barb. 122; *Thorne v. Cramer*, 15 Barb. 112; *The Aurora v. United States*, 7 Cranch, 382; *State v. Swisher*, 17 Tex. 441; *People v. Stout*, 23 Barb. 338; *Rice v. Foster*, 4 Harr. 492; *Parker v. Commonwealth*, 6 Barb. 507; *Darling v. Rogers*, 7 Kan. 892; *Robinson v. Perry*, 17 Kan. 248; *Lehman v. McBride*, 15 Ohio St. 605. (7) The authority frequently granted municipal corporations to do certain acts, such as to contract particular debts, to subscribe to improvements, to impose taxes for local purposes, to pass by-laws, ordinances, etc., is no delegation of the law-making power, provided that no act thus authorized abridges or enlarges any of those rules of conduct that affect the social and political rights of a citizen; when they do so the law is *pro tanto* unconstitutional and void. Cooley's Const. Lim. 116, 125; *Commonwealth v. Judges Quarter Sessions*, 8 Barr (Pa.) 395; *Parker v. Com., supra; Com. v. Painter*, 10 Barr (Pa.) 391; *Comm. v. Gas Co.*, 2 Jones 318; *Ex parte Burnett*, 30 Ala. 461; s. c., 32 Ala. 728; *Barto v. Himrod, supra; People v. Stout*, 23 Barb. 338; *State v. Copeland*, 2 R. I. 30; *Maize v. State*, 4 Ind. 351; *Santo v. State*, 2 Iowa, 206; *Geebrick v. State*, 5 Iowa, 493; *People v. Collins*, 3 Mich. 415; *State v. Parker*, 26 Vt. 336; *Hoers v. Reading*, 9 Harris, 188; *State v. Burcke*, 9 Iowa, 203; *State v. Weir*, 33 Iowa, 134; *Gohea v. State*, 42 Ind. 547; *Com. v. Patton*, 88 Pa. St. 258; *Scowden's Appeal*, 7 South. Law Review, 921; *Devine v. Cook Co.*, 84 Ill. 590; *State ex rel. v. Mitchell*, 31 Ohio St. 592.

NORTON, C. J.—It is admitted that, in pursuance of the provisions of the law of 1887 (Acts, 1887, p. 179), an

election was held in Trenton, a town having more than twenty-five hundred inhabitants, which resulted in a majority of votes being cast against the sale of intoxicating liquors. After this result was ascertained, the relator applied to the county court of Grundy county for license to keep a dramshop in said town, having fully complied with the provisions of what is known, in common parlance, as the Downing dram-shop law. The county court refused to grant the license on the ground that the act of the legislature above quoted forbade the sale of intoxicating liquors in said town, a majority of the voters at an election held for that purpose having voted against such sale. The relator thereupon instituted this proceeding by mandamus to compel the county court to grant him license. The circuit court held the above act to be unconstitutional, and ordered a peremptory writ commanding the county court to grant the license, and this is the judgment from which the respondents have appealed to this court, and the only question which the appeal requires to be decided is, whether the said act is valid or void.

No question of more delicacy or importance ever comes before a court of last resort, than one which involves the constitutionality of an act passed in due form by the legislative department of the government. With the policy of the law, the wisdom or want of it in its enactment, we have no concern; that belongs to the domain of the legislature. Our business is to declare what is the law, and not to make laws. When the constitutionality of a law is assailed, before we can assume to declare it void, and thus erase it from the statute books, its invalidity must be made plainly to appear. *Stephens v. Bank*, 43 Mo. 390.

"When courts are called upon to pronounce upon the invalidity of an act of the legislature, passed with all the forms and ceremonies requisite to give it force, they approach the question with great caution, * * *

and never declare a statute void unless in their judgment its nullity and invalidity are placed beyond a reasonable doubt. No rule of construction is better established, both on principle and authority, than that acts of the legislature are presumed to be constitutional until the contrary is clearly shown." *State ex rel. v. Railroad*, 48 Mo. 460. "The solution of such a question * * * ought not to be made by a resort to mere verbal criticisms, subtle distinctions, abstract reasoning, or nice differences in the meaning of words." *State v. Able*, 65 Mo. 362.

In the case last cited, the following is approvingly quoted : "That the legislature is peculiarly under the control of the popular will. It is liable to be changed at short intervals by elections. Its errors, therefore, can be quickly cured. The courts are more remote from the people. If we, by following our doubts in the absence of clear convictions, shall abridge the authority of the legislature, there is no remedy for six years. Thus, to whatever extent this court might err in denying the rightful authority of the legislature, we would chain that authority for a long period to our feet. It is better and safer, therefore, that the judiciary, if err it must, should not err in that direction. If either department of the government must slightly overstep the limits of its constitutional powers, it should be that one whose official life would soonest end. It has the least motive to usurp power not given, and the people can sooner relieve themselves of its mistakes. Herein is a sufficient reason that the courts should never strike down a statute unless its conflict with the constitution is clear. The judiciary ought to accord to the legislature as much of purity of purpose as it would claim for itself, as honest a desire to obey the constitution, and also a high capacity to judge of its meaning." *Brown v. Buzan*, 24 Ind. 197. *Vide*, also, *State ex rel. v. Laughlin*, 75

Mo. 147; *Philips v. Railroad*, 86 Mo. 540; *Kelley v. Meeks*, 87 Mo. 401.

"The right of the judiciary to declare a statute void and to arrest its execution, is one which, in the opinion of all courts, is coupled with responsibilities so grave that it is never to be exercised except in very clear cases. * * * The party who wishes us to pronounce a law unconstitutional takes upon himself the burden of proving, beyond doubt, that it is so." *State v. Addington*, 77 Mo. 110. The above authorities have been referred to to indicate the rules for our guidance in determining the validity of the law which this proceeding challenges.

The first ground of challenge is, that the act in question is not a general, but a local or special law, and is in that respect violative of article 4, section 53, of the constitution, which, among other things, provides "that no local or special law shall be passed where a general law can be made applicable." We are not left at sea for a rule by which to determine what is a general and what is a special or local law. The distinction between them has been very clearly drawn by this court in the following cases:

In the case of *State ex rel. v. Tolle*, 71 Mo. 645, it is held "that a statute which relates to persons or things as a class is a general law, while a statute which relates to particular persons or things of a class, is special."

In the case of *Humes v. Railroad*, 82 Mo. 231, it is said to be a settled rule of construction that a legislative act which applies to and embraces all persons "who are or may come into like situations and circumstances, is not partial." *Philips v. Railroad*, 86 Mo. 540, is to the same effect. *Vide*, also, *Ewing v. Hoblitzelle*, 85 Mo. 64. Citations from the highest courts of other states to the same effect might be added, but reference to them is not deemed to be necessary simply to fortify

a rule adopted by this court so consonant with reason and common sense.

Under the rule thus laid down, the contention of the relator, that the act in question is a local or special, and not a general law, is without foundation. The act in question applies to all the counties in the state as a class, and to all incorporated cities or towns as a class having a population of twenty-five hundred or more inhabitants. All the counties in the state and all cities and towns with the requisite population, may, by complying with its terms, come under its provisions.

This direct question was passed upon by four of the judges of this court in 55 Mo. 297, and a similar law relating to township organization was declared to be a general law, and the reason given for the conclusion was, "that every county in the state might avail itself of the privileges offered by the law by a majority vote of its people." The fact that one or more counties, or one or more cities or towns, may, by a majority vote, put the law in operation in said county or counties, cities or towns, and that other counties or cities and towns may not do so, does not affect the rule nor furnish a test by which to decide whether the law is local or general, and this court has never held otherwise.

The next ground upon which the validity of the act is assailed, is: That it is a delegation of legislative power to the people of the counties, cities, and towns of the state. While the rule that the legislature is alone invested with the power to make laws, and that it cannot delegate to the people the power to pass a law, does not admit of question or doubt, there is another rule just as firmly and indisputably established, which is, that the legislature may pass a law to take effect or go into operation on the happening of a future event or contingency, and that such contingency may be a vote of the people. *City of St. Louis v. Alexander*, 23 Mo.

483 ; Cooley's Const. Lim. [3 Ed.] 117 ; *State ex rel. v. Wilcox*, 45 Mo. 465 ; *Township Organization Act*, 55 Mo. 295 ; *State ex rel. v. Mayor of St. Joseph*, 37 Mo. 270 ; *State v. Binder*, 38 Mo. 451 ; *State v. Winkelmeier*, 35 Mo. 103.

While this local option act provides that any county, or town, or city of the class named, may, by a majority vote, put such county, town, or city under the operation of the law, it does not refer to them the question of passing a law ; that the legislature had already done, and only called upon them to decide by a vote whether they would accept the provisions of a law regularly enacted by both houses of the General Assembly and approved by the Governor. By its provisions the law and not the vote extended its influence over the locality voting against the sale of intoxicants. It was the law that authorized the vote to be taken, and when taken the law, and not the vote, declared the result that should follow the vote. The vote was the means provided to ascertain the will of the people, not as to the passage of the law, but whether intoxicating liquors should be sold in their midst. If the majority voted against the sale, the law, and not the vote, declared it should not be sold. The vote sprang from the law, and not the law from the vote. By their vote the electors declared no consequences, prescribed no penalties, and exercised no legislative function. The law declared the consequences, and whatever they may be they are exclusively the result of the legislative will.

A law passed by the legislature of Kentucky declared that it should take effect when ratified by a majority of the voters of the county. It was claimed to be unconstitutional on the ground that it delegated legislative power, and it is said by the court in disposing of the question: "If such language is to render the law unconstitutional, it is, in effect, to deny the power of the legislature to refer any question of local government or

The State ex rel. Maggard v. Pond.

even police regulation to those directly interested in this character of legislation. The popular will expressed for, or against the provisions of the law does not in any manner affect the legislative intent." *Commonwealth v. Weller*, 29 Am. Rep. 408-11.

That the law we are considering comes within the police power of the state is held by this court in the case of *State ex rel. v. Hudson*, 78 Mo. 304, where it is said : " The state has the right, in the exercise of its police power, to prohibit the sale of intoxicating liquors without a license. * * * The license fee exacted by the general law regulating dramshops * * * is not a tax within the meaning * * * of the constitution, but is a price paid for the privilege of doing a thing, the doing of which the legislature has the right to prohibit altogether. Such laws are regarded as 'police regula-tions established by the legislature for the prevention of intemperance, pauperism, and crime,' * * * and are not regarded as an exercise of the taxing power. 'Pur-suits that are pernicious or detrimental to public morals may be prohibited altogether, or licensed for a compen-sation to the public.' "

The objection that the local option act delegates legislative power, has in effect been decided by this court to be not well taken. The judges of this court were called upon for their opinion of the constitutionality of the township organization law, the constitutionality of which was questioned on the ground that it was in effect a local law, and delegated to the people legislative power. Four of the judges held it to be constitutional, three of them giving their reasons as follows : "This township organization law contains no provisions, so far as we are able to see, prohibited by the constitution. It is a general law made for the whole state, and by its terms took effect from its passage. Every county in the state may avail itself of the privileges offered by this law by a majority vote of the people. It is left to the option

of the counties whether they will organize under the law or not. If a majority vote for it, such vote does not create the law, but places the county so voting within its provisions, and the organization then takes effect, and also the law as it existed before the vote was taken. The law does not delegate, nor was it the intention of the law-makers to delegate, legislative authority to the counties. Unless the counties avail themselves of the right to organize they will remain as they were, unaffected by any of the provisions of this statute." 55 Mo. 296.

It is argued by counsel that the local option law under consideration is a delegation of legislative power, because it cannot be made operative or take effect until a majority of the voters of a county, city, or town vote against the sale of intoxicating liquors. The same argument would apply against the validity of the township organization act, the validity of which was sanctioned by the members of this court, for when it was passed by the legislature it did not operate as a law in a single county in the state, and by the very terms of the act it could not become operative in any county until a majority of the voters voted in favor of such organization.

The same objections that are made to the local option law under consideration were made to an act of the legislature ( G. S., 1865, chap. 47 ), "authorizing any city, town, or village to organize for school purposes with special privileges." The law provided that any incorporated city or town in the state might organize under that chapter, provided a majority of qualified voters, at any election which it authorized to be held, should vote by ballot for the adoption of the chapter, which contains fifteen sections. It further provided that "the electors in favor of the adoption of this chapter shall write upon their ballots ' School law,' and those opposed thereto should write on their ballots ' No school law,' the adoption or rejection of this chapter to be

determined by a majority of the votes to be cast in the manner aforesaid." The voters of the town of Utica voted at an election held for that purpose in favor of adopting the law, organized under its provisions, and elected directors. The right of one of the directors was challenged on the ground that the law was unconstitutional, in that it was a local law, and because it delegated legislative power to the voters. Both these objections were held by this court to be not well taken, and the constitutionality of the law was affirmed. *State ex rel. v. Wilcox*, 45 Mo. 458.

In the disposition of the objections made to the law it is said: "The legislature cannot propose a law and submit it to the people to pass or reject it by a general vote. That would be legislation by the people. But the proposition cannot be successfully controverted that a law may be passed to take effect on the happening of a future event or contingency. The future event—the happening of the contingency * * * —affords no additional efficacy to the law, but simply furnishes the occasion for the exercise of the power. The law is complete and effective when it has passed through the forms prescribed for its enactment, though it may not operate, or its influence may not be felt, until a subject has arisen upon which it can act. In the case we are considering the act took effect with the other laws contained in the statutes. It was passed according to the prescribed forms designated in the constitution. Its enactment did not depend upon any popular vote, but parties to be affected by it were at liberty to accept the privileges granted and incur the burdens and obligations it imposed, as their interests or will should dictate. If they elected not to avail themselves of its privileges, it did not in the least impair its force; it still stood a valid enactment on the statute book. If they organized under it, they were entitled to the benefit of its provisions;

but in either event the law remained the same.   There is no pretense, therefore, for saying that the law is objectionable because it depends for its efficacy on the vote of the people. This point must be ruled against the plaintiff in error.   *   *   *   Special statutes relate to certain individual classes or particular localities.   Had the act applied to a certain specified town or a single corporation, it would have been special, but such is not the case.   It is co-extensive with the state, and its influence is felt in every county and almost every township.   It is conceded that it does not include in its operation every individual, nor extend to all the territory, but that is not required."   *State ex rel. v. Wilcox, supra.*

I have reproduced what is said in the above case, because it is a complete and authoritative judicial answer rendered by this court to the objections made to the local option act under discussion, viz., that it is a local law and delegates legislative functions to the people.   The local option act is a complete law, passed by the legislature in conformity with the rules prescribed for the enactment of a law, and took effect by virtue of section 36, article 4, of the constitution, in ninety days after the adjournment of the legislature.   After the expiration of that time it authorized a vote to be taken, not as in the school law case, whether the law should be adopted or rejected, but for or against the sale of intoxicating liquors.   No question of adopting or rejecting the law, or passing the law, was referred to them, and "its enactment," as said in the school law case, "did not depend upon any popular vote," and as was also said :   "The law is complete and effective when it passes through the forms prescribed for its enactment, though it may not operate, or its influence be felt, until a subject has arisen upon which it can act ; and there is no pretense for saying that the law is objectionable because it depends for its efficacy on a vote of the people."

So in the case of *City of St. Louis v. Alexander*, 23

Mo. 483, where by an act of the legislature the legality of a subscription to a railroad was made to depend on a majority vote of the voters of the city, the constitutionality of the law was assailed on the ground that it was a delegation of legislative power to the voters, the objection was overruled and the law sustained. So in case of *State v. Binder*, 38 Mo. 451, the act of March, 1857, provided that the municipal corporations of St. Louis county, whenever authorized by a majority of the legal voters, might grant permission to sell, within the corporate limits, on Sunday, any refreshments except distilled liquors. Under this act an election was held and a majority voted in favor of giving the permission. The city council being thus authorized passed an ordinance accordingly. The law was sustained by the court, notwithstanding the fact that the ordinance passed in pursuance of the vote operated as a repeal of the general laws forbidding, everywhere in the state, the sale of fermented liquors on Sunday, and in passing on the question it is said : "The act of the General Assembly did not directly repeal the statute making it a misdemeanor to sell fermented liquors on Sunday, but it gave to the city of St. Louis the power to pass an ordinance which should have the effect to allow the sale of such liquors on Sunday within the corporate limits, whenever a majority of the legal voters of the city should authorize the same to be done, and when that power had been called into exercise, and ordinances passed in pursuance of such authority given, the effect thereof was necessarily to repeal so far and to supersede the previous statute. The exercise of the power was made to depend upon the consent and authority of a majority of the legal voters of the city."

The case of *Lammert v. Lidwell*, 62 Mo. 189, is cited in support of relator's contention, where it is held that a stock law then before the court for consideration was invalid, because it was not a law enacted by the leg-

islature, but a mere proposal to the people of the counties of the state to adopt a law by a majority vote. The case of *Parker v. Commonwealth*, 6 Pa. St. 507, since overruled, is in part relied upon for the conclusion announced. Whatever of conflict exists between this case and the cases hereinafter cited, I shall not attempt to reconcile, but will say that, so far from overruling any of them in terms, three of them are approvingly cited, namely, the cases in 23 Mo., 45 Mo., and 55 Mo., *supra*. If the doctrine announced in four of the five cases referred to and decided by this court is to prevail, the objections made to the validity of the local option law of 1887, on the ground that it is a local law, and delegates legislative power, must fall to the ground. If a law can be enforced, as was held in the case of *State v. Binder*, *supra*, which provides that the municipalities of the county of St. Louis, whenever a majority of the legal voters thereof authorized them to do so, might permit the sale of fermented liquors on Sunday, and that the authority when exercised repealed, as to that locality, the general law forbidding such sales on Sunday—if such a law can be enforced why may not the law of 1887 be enforced, which declares that when the majority of qualified voters in any city or town in the state with more than twenty-five hundred inhabitants vote against the sale of intoxicating liquor, that it shall not thereafter be sold in such town or city? I am unable to answer the question except by saying that it can. If enforceable in the one case it is enforceable in the other, and the enforceability of either or both rests upon precisely the same principle.

But if these cases are to be ignored, and we are to blow out the light which our own ruling sheds upon the subject and look elsewhere for light to guide us, while in the foreign fields to which this course leads us, we will find a conflict of authority : I think it may be safely affirmed that the great weight of authority is in favor

·of the validity of local option laws, like ours, and owing
to the importance of the subject it will be pardonable to
refer in detail at least to some of them. In the case of
*Fell v. State*, 42 Md. 72, an act of the legislature was
assailed, which is like our own act. This act provided
for an election to be held in July, 1874, at which the
voters of the several districts in the counties named
should cast ballots "for the sale of spirituous or fer-
mented liquors," or "against the sale of spirituous or
fermented liquors," and if it should be found, by the
returns of the judges of election and proclamation of
the judges of the circuit court, that the majority of
votes in any district of either of said counties had been
cast against the sale of spirituous or fermented liquors,
that then it should not be lawful for any person to sell
spirituous liquors, in any district in either of said counties
voting by a majority against selling the same, under a
penalty ; and it was further provided that the said act
should take effect immediately after it should have been
determined by a majority of the voters in any one
or more election districts of the counties named,
whether or not spirituous or fermented liquors should
be sold. It was held by the court, after an exhaus-
tive examination of the subject, in which the attention
of the court was called to the same line of author-
ities cited to us by counsel for relator in this case,
that the act was constitutional; that its going into
effect and becoming operative, being made to depend
upon the result of a popular vote, was not a delegation
of legislative power to the people. The same question
was up before the Supreme Court of Georgia upon a like
statute in the case of *Caldwell v. Barrett*, 73 Ga. 604,
and it was held to be valid.

In the case of *Commonwealth v. Weller*, 77 Ky. 218,
an act which prohibited the sale of intoxicating liquors
in the county of Bullitt, "which provided that the act
shall take effect whenever it shall be ratified by a ma-

jority of the voters of said county," was claimed to be void, as delegating legislative power. The objection was overruled and the act was held to be valid, it being said by Pryor, J., as the organ of the court, that "when it (the act) passed the legislature and was signed by the executive it then became a law, and by reason of the law, the people interested in its passage were authorized to vote for or against its provisions; that its operation is made to depend on the popular will is a part of the law itself, and its going into operation on the contingency that the people voted for it was the legislative will on the subject." In the case of *State v. Noyes*, 30 N. H. 279, it was held that a statute making bowling-alleys in twenty-five rods of a dwelling nuisances is not unconstitutional, nor will it be so, though the statute is to be in force only in those towns in which it is adopted in town meeting.

In *Erlinger v. Boneau*, 51 Ill. 94, where the court had under consideration an act to prevent domestic animals from running at large, it is held that, it is fairly within the scope of legislative power to prescribe as one of the conditions upon which the law in a given case shall come into operation or be defeated, that it shall depend on a vote of the people of the locality to be affected by its provisions.

In *Locke's Appeal*, 72 Pa. St. 492, the act authorized the voters of a certain ward in Philadelphia to vote by ballot "for license" or "against license," and provided that whenever by the returns of the election it shall appear there is a majority against license, it shall not be lawful for any license to issue for the sale of spirituous, vinous, malt, or other intoxicating liquors in said ward, with a section added imposing a penalty for thereafter selling liquors in said ward. In an elaborate opinion, rendered by Judge Agnew, in which he reviews and overthrows the case of *Parker v. Commonwealth*, 6 Barr, 507, he affirms the constitutionality of the law, the ground

upon which it was assailed being that it was a delegation of legislative power.

In case of *Smith v. Janesville*, 26 Wis. 291, C. J. Dixon, in discussing this question, says : " But it is said that the act is void, or at least so much of it as pertains to the taxation of shares in national banks, because it was submitted to a vote of the people, or provided that it should take effect only after approval by a majority of the electors voting on the subject at the next general election. This was no more than providing that the act should take effect on a certain future contingency, that contingency being a popular vote in its favor."

The constitutionality of local option laws is discussed in 35 Am. Dec. 337, in a note to the case of *Commonwealth v. Kimball*, and it is said that, on a review of the whole question, it appears that the great weight of authority, and the better reasons are in favor of the constitutionality of these laws, and as sustaining that view cites the following authorities : *Locke's Appeal*, 72 Pa. St. 491 ; *State v. Common Pleas Morris County*, 36 N. J. L. 72 ; *State v. Wilcox*, 42 Conn. 364 ; *Fell v. State*, 42 Md. 71 ; *Anderson v. Commonwealth*, 13 Bush (Ky.) 485 ; *State v. Cook*, 24 Minn. 247, *Boyd v. Bryant*, 35 Ark. 69 ; *Bancroft v. Dumas*, 21 Vt. 456 ; *Commonwealth v. Bennet*, 108 Mass. 27 and 110 Mass. 357 ; *State v. O'Neill*, 24 Wis. 149 ; *State v. Noyes*, 30 N. H. 279 ; *Railroad v. Commissioners of Clinton County*, 1 Ohio St. 77.

On the other side, as being opposed to the validity of such laws, is cited the cases of *Rice v. Foster*, 4 Harr. (Del.) 479 ; *State v. Weir*, 33 Iowa, 134 ; *Ex parte Wall*, 48 Cal. 279 ; *Lammert v. Lidwell*, 62 Mo. 188 ; *Maize v. State*, 4 Ind. 342 ; *State v. Swisher*, 17 Texas, 441.

It may be said of the cases cited that the case of *Ex parte Wall* is criticized and weakened, if not destroyed, as authority by the case of *People ex rel. v. Nally*, 49 Cal. 478, and the case of *Maize v. State*, 4 Ind. 342, is

not supported by the subsequent case of *Groesch v. State*, 42 Ind. 547. It is squarely held in case of *Rice v. Foster*, 4 Harr. (Del.) 479, in an exhaustive opinion, that an act authorizing the people to decide whether the license to sell intoxicating liquors should be permitted, was unconstitutional and void. The decision was put upon the distinct ground that the act was a delegation of legislative power. Much of the opinion is devoted to an elaborate argument to show that the law-making power is lodged alone in the legislature, and that the power to pass a law cannot be delegated to the people. The proposition which this opinion labors to maintain, that under our form of government the power and duty of making laws is cast upon the legislature, and that such power cannot be delegated, except, perhaps, to municipal corporations for their local government, is too clear to admit of dispute; the disputable question is not whether the legislature can delegate legislative power, for that is conceded, but it is whether the legislature can pass a law, in the mode prescribed by the constitution and complete in all its parts, and making the operation or taking effect of such law depend upon a future event or contingency, such as a majority vote of the people in the localities to be affected by it.

That the legislature can do that has been affirmed, not only by this court, in the cases hereinbefore referred to in this opinion, but also by other courts of the highest authority, whose opinions have also been referred to somewhat in detail, and others simply cited. The logic of the argument against the validity of the law under consideration, if sound, affects the dram-shop law. That act provides that no person shall sell intoxicating liquors in any quantity less than one gallon without taking out a license as a dram-shop keeper, and it also provides that it shall not be lawful for the county court of any county, or clerk thereof in vacation, to grant any license to keep a dramshop in any city or town containing 2,500 inhabi-

tants or more, until a majority of the tax-paying citizens in the block or square shall sign a petition asking for such license to keep a dramshop in such block or square, nor in any incorporated town or municipal township, until a majority of both of the assessed tax-paying citizens therein, and in the block or square in which the dramshop is to be kept, shall sign a petition asking for such license to keep a dramshop. By this act the lawfulness of granting a license is made to depend on the will of the majority of the tax-paying citizens expressed to the county court, asking that a license be granted, and until that will is so expressed, it is unlawful to grant the license, and when it is so expressed it is made lawful to grant it. The act prohibits the sale of intoxicants in less quantities than one gallon without a license, and leaves it to a majority of the taxpayers to be affected by its sale, to say whether it shall be lawful to grant the license. And no one since the case of *State v. Searcy*, 20 Mo. 489, has ever pretended that such a law was unconstitutional on the ground that it delegated legislative power to the people, or on any other ground.

If it is legitimate for the legislature to give to the people the right, as is done in the dram-shop law, to say whether it shall be lawful to grant a license to sell intoxicants, why is it not also legitimate for the legislature to give them the right to accept the provisions of a law which forbids the sale of intoxicants altogether? It is as much a delegation of legislative power in the one case as in the other, but according to the authorities I have hereinbefore cited, it is not a delegation of such power in either case. It is argued that, inasmuch as the law in question may go into operation in one township or county and operate as a repeal of the dram-shop law therein, that it is for that reason invalid. This argument is answered by the cases of *State v. Binder*, 38 Mo. 451; *Township Organization case*, 55 Mo. 295, and the *School Law case*, 45 Mo. 458.

When the township organization law left the hands of the legislature, except for the purpose of a vote being taken, it had no operation in any county in the state, and could only operate in such counties as might thereafter accept its provisions by a vote, and when so accepted in such county it operated as a repeal in such county of the general law regulating the organization and government of counties in the state. So in the school case, 45 Mo. 458, when chapter 47, General Statutes, 1865, left the hands of the legislature, it did not operate in a single town in the state except to enable the voters to adopt it at an election held for that purpose, and when so accepted or adopted by any town, it became operative therein and worked a repeal of the general law governing school districts.

An elaborate argument is also made to show that the law is invalid because it may be accepted in one county and not in another, and that, in consequence of this, a person could be punished in one county for selling liquor and not in the other. The same arguments would apply to the dram-shop law, for if the taxpayers of one town, city, or county withhold their assent to the granting of license, and the taxpayers of another town, city, or county give their assent, a person selling liquor in quantities less than a gallon could be punished for making such sale, while a person selling liquor in the same quantities, when the assent of the taxpayers had been obtained, could not be liable to punishment.

It is insisted that the law repeals the pharmacist and druggist law and is on that account unconstitutional. It will be time enough to determine that question when a case is presented calling for its determination.

The power of the legislature to repeal laws is as broad as their power is to make them, and if, in the exercise of their power to pass a law, they at the same time repeal one, such repeal cannot be made the test to try the validity of the law passed.

It is also claimed that the act in question is irrepealable. I am unable to understand the ground on which this claim is based. The right of the legislature to repeal a law, provided such repeal does not take away a vested right, or impair the obligation of a contract, is, I think, beyond dispute. What vested right would be taken away, or what obligation of a contract would be impaired, by the repeal of this act? The question answers itself.

It is also claimed that the ninth section of the act, which provides a punishment for its violation, is unconstitutional, in that it prescribes a higher punishment for its violation than for a violation of the dram-shop law. It will also be time enough to decide this question when a case arises demanding its decision. But conceding (without deciding the point) that said section 9 is unconstitutional, as claimed, that does not render the whole act void. It is said in case of *State v. Clark*, 54 Mo. 36, "* * * it is not pretended that unconstitutional provisions in a law make it totally void. On the contrary, it is well settled that they do not, and that a law may well stand so far as it is constitutional, although it has in it certain provisions which are not valid." *State v. Binder*, 38 Mo. 451; Cooley's Const. Lim. 176-8.

Much of the argument made by counsel for relator is addressed to the impolicy of the act. That line of argument is proper for the legislative ear, but not for ours. With its policy we have nothing to do. Our business is, *discere legem, non dare legem*, to declare what the law is, not to make it or decide what it ought to be. That is a responsibility resting upon the legislature. In view of the rule stated in the first part of this opinion, by which all courts are guided in determining the constitutionality of a law ; and in view of the decisions of this court on the validity of acts similar in principle to the one under consideration, and the decided weight of authority, as indicated in the opinions of the highest

courts of other states upon like questions, we must hold the said act of 1887 to be a valid and constitutional law.

The judgment of the circuit court awarding peremptory writ is hereby reversed and proceeding dismissed, with the concurrence of Judges Ray, Black, and Brace. Judge Sherwood dissents.

SHERWOOD, J., DISSENTING.—This appeal is taken in order that it may be determined whether the circuit court of Grundy county was correct in ruling that the act in relation to "Dramshops, Local Option," etc., approved April 5, 1887, commonly known as the "Wood Law," afforded no valid ground to the county court of that county for denying to the relator, Maggard, a license to keep a dramshop in a certain block in the town of Trenton, he having fully complied with the conditions of the act, approved March 24, 1883, commonly called the "Downing Law."

The title of the act which gave origin to this proceeding is as follows:

"DRAMSHOPS: LOCAL OPTION — MANUFACTURE AND SALE OF INTOXICANTS.

."An act to provide for the preventing of the evils of intemperance by local option in any county in this state, and in cities of twenty-five hundred inhabitants or more, by submitting the question of prohibiting the sale of intoxicating liquors to the qualified voters of such county or city ; to provide penalties for its violation, and for other purposes."

Section 1 provides how a petition may be presented to the county court in order to have an election held, etc. '

Section 2 provides how a petition for a similar purpose may be presented to the body having legislative functions in a city or town having a population of twenty-five hundred inhabitants or more.

Section 3 provides how notice of the election shall be published. The other sections are as follows :

"Section 4. That all persons voting at any election held under the provisions of this act, who are against the sale of intoxicating liquors, shall have written or printed on their ballots 'against the sale of intoxicating liquors ;' and all those who are in favor of the sale of such intoxicating liquors shall have written or printed on their ballots 'for the sale of intoxicating liquors ;' provided, that if the county court or municipal body ordering such election deem it expedient, they may order that both the above sentences may be written or printed on the tickets to be used and voted at said election, with the further instruction printed on such tickets or ballots —'erase the clause you do not want.'

"Section 5. If a majority of the votes cast at such election be 'for the sale of intoxicating liquors,' such intoxicating liquors may be sold under the provisions of existing laws regulating the sale thereof, and the procuring of license for that purpose ; and if a majority of the votes cast at such election be 'against the sale of intoxicating liquors,' the county court or municipal body ordering such election shall publish the result of such election once a week for four consecutive weeks, in the same newspaper in which the notice of election was published ; and the provisions of this act shall *take effect and be in force from and after the date of the last insertion of the publication last above referred to ;* and provided further, that no license to sell intoxicating liquors of any description, prohibited by this act, shall be granted during the time of publication last above mentioned ; and provided further, that this act shall not be so construed as to interfere with any license issued before the day of such election, but such license may run until the day of its expiration, and shall not be renewed. The election in this act provided for, and the result thereof, may be contested in the same manner as

is now provided by law for the contest of the elections of county officers in this state.

"Section 6. That if a majority of the votes cast at any election held under the provisions of this act shall be 'against the sale of intoxicating liquors,' it shall not be lawful for any person within the limits of such county (lying outside of the corporate limits of any city or town having, at the date of such order of election, a population of twenty-five hundred inhabitants or more) or city, as the case may be, to directly or indirectly sell, give away, or barter in any manner whatever, any kind of intoxicating liquors or beverage containing alcohol in any quantity whatever, under the penalties hereinafter prescribed.

"Section 7. That whenever the election in this act provided for has been held and decided, either 'for' or 'against' the sale of intoxicating liquors, then the question shall not be again submitted within four years next thereafter, in the same county or city, as the case may be, and then only upon a new petition, and in every respect conforming to the provisions of this act.

"Section 8. That nothing in this act shall be so construed as to prevent the sale of wine for sacramental purposes, nor shall anything herein contained prevent licensed druggists or pharmacists from furnishing pure alcohol for medicinal, art, scientific, and mechanical purposes.

"Section 9. That any person violating the provisions of this act shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished by a fine of not less than three hundred dollars, nor more than one thousand dollars, or by imprisonment in the county jail not less than six months, nor more than twelve months, or by both such fine and imprisonment." Laws 1887, p. 181.

The ruling that this court is thus called on [to review brings in question the constitutional validity of

the "Local Option Law." That validity is questioned in various ways and from different points of view. I will now consider the objections which are urged against its validity. If any one of them be sustained, further inquiry as to others will be needless ; but, owing to the importance of the subject, I will consider them all.

And, first, I will notice the difference in essential particulars between the constitution of 1865, and those of our present constitution. The first section of article 4, of the former, provides that, "the legislative power shall be vested in a general assembly, which shall consist of a senate and a house of representatives." The first section of an article of the same number in the constitution of 1875, provides that, "the legislative power, *subject to the limitations herein contained*, shall be vested in a senate and house of representatives, to be styled, 'The General Assembly of the State of Missouri.'" I have italicized the words which I regard as constituting one of those essential differences which I have mentioned. In the same article, and under the appropriate sub-title of "*limitation on legislative power*," are grouped many things which the legislature is absolutely forbidden to do, or else forbidden to do except in a specified way. These prohibitions and specifications begin at section 43 of that article, and continue on to section 52, inclusive, when we have section 53, which declares "the General Assembly shall not pass any local or special laws." Then follows, in that section, some thirty-odd specifications, wherein are specified those things which the General Assembly is forbidden to do through the agency of a local or special law.

Among those specifications I find these prohibitions : "Regulating the affairs of counties, cities, townships, wards, or school districts, * * * incorporating cities, etc., or changing their charters." In all other cases where a general law can be made applicable, no local or special law shall be enacted ; and whether a general law

could have been made applicable in any case is hereby declared a judicial question, and as such shall be judicially determined, without regard to any legislative assertion on that subject. Nor shall the General Assembly indirectly enact such special or local law by the partial repeal of a general law; but laws repealing local or special acts may be passed. Then follows section 54 of the same article, providing that "no local or special law shall be passed unless notice of the intention to apply therefor shall have been published in the locality where the matter or thing to be affected may be situated, which notice shall state the substance of the contemplated law," etc.

I. The question then presents itself: *Is the "Wood Law" a general law, or a local or special law?* A general or public law, and a special or private law, are thus defined by eminent text-writers and jurists. In Potter's Dwarris it is said: "A *public* act is a universal rule, that regards the whole community. * * * *Private* acts are those which concern only a particular species, thing, or person, * * * as acts relating to any particular place, or to one or divers particular towns. * * * A general or public act, then, regards the whole community." Potter's Dwar. 52, 53. To the same effect, see 1 Kent Com. 459, 460; 1 Blackst. Com. 85, 86.

Sedgwick says: "An act is local, when the subject relates only to a portion of the people, or their property, and may not, either in its subject, operation, or immediate necessary results, affect the people of the state, or their property in general." Sedgwick on Stat. and Const. Constr. [2 Ed.] note on p. 529. Sedgwick is approvingly cited in a recent California case, and a statute of that state, relating only to one county, was held special. *Earle v. Board of Education,* 55 Cal. 489.

In a case in New York, an act of the legislature came under discussion, which, by its terms, affected the people of *two* counties. Folger, J., delivering the

opinion of the court, among other things, remarked: "It cannot be said that an act having force only in *one* county is local, but that an act in *two* counties is *general*." And, after quoting the authorities, thus announced the conclusion of the court: "It must be held, then, from the authorities, also, that an act is *local* within the meaning of the constitution, which, in its subjects, relates to a portion of the people of the state, or to their property in general." *People v. Supervisors*, 43 N. Y. 10.

Tested by the foregoing rules and definitions, the "Wood Law" must be pronounced both a local and a special law, and, if either the one or the other, it falls under the ban of the constitution. If the legislature by an act had designated those counties and towns *by name* which have, as it is said, adopted by their votes "local option," it could not be doubted that such an act would be both special and local. The fact that the people, by their votes, instead of the legislature, by an act, have designated those counties, cannot alter the principle or vary the result; for what the legislature cannot do directly, it cannot do indirectly. In such cases, "the constitutionality of an act is to be determined by its *operation*, and not by the form it may be made to assume." *State ex rel. v. The Judges*, 21 Ohio St. 11.

But a more restricted definition of a special statute may be adopted and applied in this case, and still the act in question must be held a special law. In *State ex rel. v. Hermann*, 75 Mo. 340, after giving the correct definitions of a special law, as above quoted, following the ruling in *State v. Tolle*, 71 Mo. 645, states, "that a statute which relates to persons or things as a class, is a general law, while a statute which relates to particular persons or things of a class, is special." Here the statute being discussed relates not to dram-shop keepers as a class—dram-shop keepers all over the state—only to those

*particular persons of that class* who happen to reside in certain localities affected by a majority vote, etc. I repeat, that had the legislature, by anticipatory legislation, pointed out those counties where such a vote has since occurred, and by express enactment done what it is claimed has been done by a 'majority vote of the people, who could doubt or who deny that such a law was anything more or less than a *special or local law?* Admitting, then, for argument's sake, that the people have as much law-making power as has the legislature, still it will hardly be contended that they have *any more*, or that they could, by their vote, do that which the legislature could not, by express legislative enactment.

II.   But the act is so repugnant to the "Downing Law" that it of necessity accomplishes the repeal of that law in all those localities where the "Wood Law" has been adopted, for in those places it is impossible to contend that both statutes can stand together; one must give way, for they differ in their methods of procedure, and in their penalties.   Smith Com. 896, 897, 898, 899 ; Sedgwick Constr. Stat. & Const. 100, 104, and cas. cit. It will not admit of a doubt that the "*Downing Law*" *is a general law*—one operating all over the state.   This being the case, the "Wood Law," in all those counties and localities where adopted, accomplishes, if valid, the "*partial repeal*" of the "Downing Law," thus converting *that* law into a local or special law, which will be of force only in those counties left untouched by the operation of the "Wood Law."   Could the legislature, by an act to that effect, provide for the partial repeal of the "Downing Law" in all those counties and localities —naming them—where the "Wood Law" has been adopted?   Would not such an act be local and special, in the light of the authorities I have cited?   If this question be answered in the affirmative, as I am persuaded it must be, then it stands to reason that the people, acting upon a basis of legislative authority, could

do no more by their votes than the legislature could do by a law to the same effect. Not only does the "Wood Law," if valid, repeal the "Downing Law" *in toto*, wherever the former is operative, but it also accomplishes the repeal of the act respecting druggists and pharmacists, in so far as the latter act is inconsistent with the "Wood Law." In such cases, the partial repugnancy accomplishes the partial repeal. Pott. Dwarr. 113, 155, and cas. cit.; *Van Rensselaer v. Snyder*, 9 Barb. 308. And the same observations apply to the druggists and pharmacists' act as apply to the "Downing Law."

And it is equally clear that the "Wood Law," where operative, also accomplishes these results ; it forbids the manufacturer of liquor and the wine-grower from selling their own products on their own premises, as now, by the general law, they are permitted to do ; and the general merchant and the wine and beer-house keeper are also interdicted from selling. R. S., 1879, secs. 5459, 5460, 5463. If the druggist should sell wine for aught but sacramental purposes, or anything else than *pure alcohol* for medicinal purposes, however pressing the necessity or urgent the need, he would render himself criminally responsible. Nay, more : if the farmer, at his frugal board, should give his guest or his child a glass of wine from his own vineyard, or cider from his own press, or even a physician should administer to his sick or dying patient a draught of wine, they, too, would become criminals. An act of such searching and sweeping provisions, which thus strikes down the hand of hospitality, and forbids the holy ministrations of charity, which brands as criminal the performance of offices of the most urgent human necessity, surely demands, at the hands of the courts, the most jealous observation before it receives the stamp of legal validity.

Counsel for respondent take no affirmative position

on the point, whether the act under consideration accomplishes the partial repeal of the "Downing Law." Counsel, however, in another case now pending in this court, come out flatly and say : "It is not a repeal of the dram-shop law, as plaintiffs claim, but only provides for another mode of obtaining the consent of the people interested." The inconsistencies and repugnancies between the two acts are, however, so palpable, that no room would seem to be left for discussion. The *crucial test* of the matter is found in the answer to this question : If a man is arrested in a county which has adopted the "Wood Law" for selling whiskey, *under which law* would he be tried and *under which law* punished ? This question furnishes its own conclusive answer.

III. But it is wholly immaterial, so far as concerns the result, whether the "Wood Law" operates as a *partial repeal* or a *partial suspension* of the "Downing Law." If a partial repeal, a repeal limited by the boundaries of certain counties, cities, or towns, then the consequences already noted will occur. If it be said that no repeal has occurred, then it must be obvious that the "Wood Law," during the time it has force in any given locality, during the time the former law lies dormant, will operate as a *partial suspension of a general law*, to-wit, the "Downing Law." Touching this point, Judge Cooley observes : "The legislature may suspend the operation of the general laws of the state ; but when it does so, the suspension must be *general* and cannot be made for individual cases or for *particular localities.*" Cooley Const. Lim. [5 Ed.] top p. 484. Now, the "Wood Law" is either a general, or a local or special law. If a local or special law, it falls under the express prohibitions of the constitution. If a general law, then it is unconstitutional, because of suspending the operation of the "Downing Law" and other laws in "*particular localities ;*" but if it does this, and only this, then it is a local or special law, as much so as if those localities had

been ascertained and named in the act itself. Courts of justice cannot permit that to be done by an indirection which could not be done by a direct method of procedure ; cannot permit "constitutional prohibitions to be evaded by dressing up *special laws* in the *garb* and *guise of general statutes.*" *State ex rel. v. Hermann,* 75 Mo. 340.

IV. If I have been correct in holding the "Wood Law" a local or special one, then it follows that it also violates two other prohibitions of section 63, aforesaid, by "regulating the affairs of counties, cities," etc., and by changing the charter of cities.

V. The "Wood Law" is also obnoxious to the constitutional objection that it transcends the bounds of legitimate legislation in another particular : It subjects certain dram-shop keepers, who reside in localities where the law referred to has been adopted, to *larger fines and greater punishments* than those inflicted on persons of the same class who live in other counties or localities. Frequently the new law, in its operation, will be sharply contrasted with the old one in practically the *same locality*, and frequently in the *same county*, separated by but the narrow boundary which divides county from city, or county from county. Thus, under the old law, the highest punishment which could be inflicted for selling an ounce of whiskey, would be a fine of two hundred dollars ; but in those counties and localities where the new law is in force the fine could not be less than three hundred dollars, while it might be one thousand dollars, as well as an imprisonment for twelve months. Can such a law, partial as it is, stand the test of judicial scrutiny? Can the legislature, as *parens patriae*, with *impartial hand*, and for the *same offence*, inflict on one man a light penalty, and on his *next-door neighbor a heavy punishment ?*

Speaking of such laws, Judge Cooley says : "But a statute would not be constitutional  *  *  *  which

should select particular individuals from a class or locality, and subject them to peculiar rules, or impose upon them special obligations or burdens from which others in the same locality or class are exempt. * * * But every one has a right to demand that he be governed by general rules, and a special statute which, without his consent, singles his case out as one to be regulated by a different law from that which is applied in all similar cases, would not be legitimate legislation, but would be such an arbitrary mandate as is not within the province of free governments. Those who make the laws ' are to govern by promulgated, established laws, not to be varied in particular cases, but to have one rule for rich and poor, for the favorite at court and the countryman at plough.' This is a maxim in constitutional law, and by it we may test the authority and binding force of legislative enactments." Cooley Const. Lim. [ 5 Ed. ] top p. 483, 485.

Discussing such a law, Judge Catron said : "The rights of every individual must stand or fall by the same rule of *law* that governs every other member of the body politic, or land, under similar circumstances ; and every partial or private law which directly proposes to destroy or affect individual rights, or does the same thing by affording remedies leading to similar consequences, is unconstitutional and void. Were it otherwise, odious individuals and corporations would be governed by one law ; the mass of the community and those who made the law, by another ; whereas the like general law, affecting the whole community equally, could not have been passed." *Wally's Heirs v. Kennedy*, 2 Yerg. 554. To the same effect is *Bull v. Conroe*, 13 Wis. 233, and cases cited.

VI. The " Wood Law" is also open to the charge that in certain localities where it bears sway it denies to those resident therein "*the equal protection of the laws,*" thus violating section 1 of the fourteenth amend-

ment of the federal constitution. In *State v. Hayes*, 81 Mo. 574, that section was passed upon, and it was ruled that, although it was competent for the legislature, by a general law, to repeal all of the provisions relating to changes of venue in criminal causes, yet that the legislature could not pass a law for such changes of venue which should be general throughout the state, with a clause forbidding its benefits to be enjoyed by the citizens of St. Louis ; and that the result was precisely the same whether such a law was passed in the first instance, or whether, by subsequent legislation, the same deprivation of the right, elsewhere enjoyed, occurred. Under the operation of the new law, one who violates its provisions is deprived of his rights recognized in other localities and protected by the general law of the state, *to the extent that the punishment under the new law exceeds that of the old.*

If such legislation as this is valid, then I confess I can see no obstacle in the way of having *murder*, *rape*, *burglary, etc.*, punished in as many various ways as the voters in an equal number of localities may, by virtue of their newly-found law-making function, determine. My position on this point is, shortly, this : That a *crime* against the *state* can only consist in a violation of some *public* or *general* law — a law co-extensive with the boundaries of the state which enacts it (4 Blackst. 5 ; *City of Kansas v. Clark*, 68 Mo. 588), and, of course, uniform in its operation and equally binding on every member of the community throughout those boundaries. Anything less than this is not a public or general, but a partial, local or special law—a law under which no one can be prosecuted and punished *in the name of the state* without a violation of constitutional prohibitions and guarantees. *Wally's Heirs v. Kennedy, supra.*

VII. The point next for determination is whether the "Wood Law" is a delegation of legislative power. If my conclusions on previous points be correct, the dis-

cussion of this point is immaterial, but as it is fairly presented, it is proper that it should be discussed. Treating of the subject of the delegation of such power, Mr. Justice Cooley remarks : "One of the settled maxims in constitutional law is, that the power conferred upon the legislature to make laws cannot be delegated by that department to any other body or authority. Where the sovereign power of the state has located the authority there it must remain ; and by the constitutional agency alone the laws must be made until the constitution itself is changed. The power to whose judgment, wisdom, and patriotism this high prerogative has been intrusted cannot relieve itself of the responsibility by choosing other agencies upon which the power shall be devolved, nor can it substitute the judgment, wisdom, and patriotism of any other body for those to which alone the people have seen fit to confide this sovereign trust." Cooley Const. Lim. (5 Ed.) top p. 139.

On the same point, Lewis, C. J., says : "The maxim which lies at the foundation of our government is that all political power originates with the people. But since the organization of government, it cannot be claimed that either the legislative, executive, or judicial powers, either wholly or in part, can be exercised by them. By the institution of government the people surrender the exercise of all these sovereign functions of government to agents chosen by themselves. * * * Thus all power possessed by the people themselves is given and centered in their chosen representatives." *Gibson v. Mason*, 5 Nev. 283.

An eminent author, cited approvingly by Judge Cooley, when discussing the same topic, observes : "These are the bounds which the trust that is put in them by the society, and the law of God and nature, have set to the legislative power of every commonwealth, in all forms of government: First. They are to govern by promulgated established laws, not to be varied in parti-

cular cases, but to have one rule for rich and poor, for
the favorite at court and the countryman at plough.
* * * Fourthly. The legislative neither must nor can
transfer the power of making laws to anybody else, or
place it anywhere but where the people have." Locke
on Civil Govt., sec. 142.

Guided by these declarations of constitutional prin-
ciples, principles everywhere admitted and nowhere
denied, I will proceed to discuss the point in hand in con-
nection with the authorities cited. Is the "Wood Law" a
delegation of the legislative power? Although the ad-
judicated cases are numerous which discuss the question
whether such power has been delegated in given instances,
and although the adjudications may seem at first
blush to differ quite widely, yet, when examined more
narrowly, however much those decisions apparently differ
in most instances, there will be found, on the whole, a
substantial uniformity. In *State v. Field*, 17 Mo. 529,
the question presented was, whether the legislature could
invest the county court with power to suspend, by order
to that effect, the act of 1851, being empowered so to do by
the thirty-third section of that act. And the power was
denied and the section mentioned held unconstitutional
and void. In delivering the opinion of the court, Gamble,
J., discussed the subject in a very able manner. In the
course of his observations he says: "The constitution
of each house of the General Assembly is provided for in
the constitution, the qualifications of the members, and
the electors who choose them; the mode in which bills
shall be passed and authenticated is also directed, and
the machinery is complete for the exercise of the legisla-
tive power conferred upon the General Assembly. The
power thus conferred is the power to make laws, and the
exercise of the power is entrusted to bodies of men, who
are supposed to be selected by the great body of the peo-
ple entitled to vote, because of their prudence, wisdom,
and integrity. The laws to be passed form 'the rule of

civil conduct, commanding what is right and prohibiting what is wrong,' and that rule derives its force from the fact that it is the will of the whole people expressed by their authorized representatives, in the forms provided by the constitution, and on subjects or questions on which the representatives have been entrusted to act. This power, thus reaching every citizen, in every relation and every interest, is to be regarded as a sacred trust, which is to be exercised by those to whom it has been committed, and every citizen has a right to demand that the rule for his conduct shall be established by that body in which he, with his other fellow-citizens, have vested the power. That portions of the people are sometimes organized as municipal corporations, and are intrusted with the power of making by-laws and ordinances for the regulation of their own local and peculiar interests, and to which their assent is given in the mode provided by law, does not make an exception to the rule that the legislative power conferred upon the General Assembly is to be exercised by that body, and not to be delegated to others. The history of such corporations, their exist-ence in the country previous to the adoption of the constitution, the principle of presumed consent to ordi-nances, * * * subject to the laws of the state, stands on peculiar grounds, and is not a part of the general legisla-tive power which is committed to the General Assembly to be exercised only by that body."

The learned judge then approvingly cites the case of *Parker v. Commonwealth*, 6 Barr, 507, and the principle announced therein, to the effect that an act giving to the citizens of certain counties the power to decide whether the sale of vinous or spirituous liquors should be con-tinued within such counties, and imposing a penalty for their sale where a majority of the votes had been against such sale, was unconstitutional, goes on to say : " The difference between the statute which was before the Supreme Court of Pennsylvania and that now under

consideration is, that the entire act there depended, for
its force in any county, upon the popular vote being cast
in its favor at the polls, without which it was not to be
binding as a law, while the act before us, being in its
own terms the expression of the judgment and will of
the legislature, allows, by its thirty-third section, the
judgment and will of a county court to set aside that of
the legislature and adopt a different rule. The difference
between the two acts is more in form than substance.
The question passed upon by the voters in Pennsylvania
was whether a law previously existing, which authorized
the issuing of licenses for the sale of liquor, should be
suspended for a year, so that no license during that time
should be issued, and as the majority of voters deter-
mined, the law was or was not in force. The question in
our act, which is to be passed upon by the court, is
whether the new act shall be suspended and the old act
revived, and if so, for how long a period."

Then, after noticing the decision in *Rice v. Foster*,
4 Harr. (Del.) 479, and stating that the act was precisely
like the Pennsylvania act, and for similar reasons held
void, he remarks: "The opinions delivered by the
judges enter at large into the consideration of the nature
of the powers entrusted to the legislative department,
and enforce the duty of the legislature to exercise the
powers upon their own responsibility. It is clearly
shown, that the power, thus committed by the people
into the hands of their constitutional representatives,
is not to be delegated to others not trusted by the people ;
nor is it within the contemplation of the constitution
that the representatives shall attempt to yield up the
power to any portion of the people themselves."

In another case in the same volume, Gamble, J.,
clearly points out the distinction between acts which
may or may not be referred to popular action. He says :
" It may be proper, however, to state, that it is not by
any means clear to the minds of the court that the act

under consideration is, or professes to be, a delegation of legislative power. The establishment of a county upon the consent of the inhabitants to assume the consequent burdens is not like the submission of a law affecting private rights to the vote of the inhabitants of a particular locality to determine whether it shall be in force or not." *State v. Scott*, 17 Mo. 521.

In *City of St. Louis v. Alexander*, 23 Mo. 513, the constitutionality of a law authorizing the county court of St. Louis county to submit to the voters of the county the question of subscribing a sum of money to the capital stock of a railroad company was passed upon by this court and the constitutionality of the act upheld, and I will quote the grounds upon which this court based its ruling: "It is not a delegation of legislative power to the city authorities to do certain things before the act is to be a law, and, if not done, no law. The act is a complete expression of legislative will. It is a law in itself, and is as much a law, notwithstanding the mayor and city council should refuse to do any act under it, as if they were to comply fully with its mandates. No act on the part of the city is required to make it a law. The legislature must exercise the power to make laws. The power remains with that body alone. It cannot be delegated; yet no one will deny to the legislature the power to pass laws with conditions on many subjects. Still there may be conditions which would make such laws unconstitutional. 'A law opening a road on condition that the owner of the land over which it passes will give it for that purpose—a law for building a bridge on condition that individuals will contribute to the cost in certain proportions—a law altering, abridging, or enlarging the vested powers of corporations aggregate, subject to the consent of such corporations—a law giving to school districts a portion of the school fund on condition that such districts will raise an equivalent or proportional sum—are all instances of proper condi-

tional legislation, even though the assent of the corporators, in the one case, to the change of their charter, or of the district, in the other, to accept the donation and comply with its terms, should be signified by a majority vote. These are all good conditions, capable of being performed without in any way interfering with the legislative will. But the law declaring an offence, or providing a punishment, or repealing an existing law, on condition that the Governor or any other individual shall assent to it, is as plainly unconstitutional. It is the naked veto power. It substitutes for, or rather adds to, the legislative will another will, which it makes necessary to the *existence* of the law. This is unconstitutional; no one doubts it; no one will pretend that a law with such a condition would be good.' Per Harrington, Judge, in *Rice v. Foster*, 4 Harrington, 499. See *Parker v. Commonwealth*, 6 Barr (Penn.) 510; *State v. Field*, 17 Mo. 529; *Aurora v. United States*, 7 Cranch, 382. But this statute does not depend upon any condition for its force, existence, or sanction. It is not unconstitutional."

In *State ex rel. v. Wilcox*, 45 Mo. 458, an act was held not open to constitutional objections which authorized cities, etc., to organize for school purposes, by a vote to that effect. Wagner, J., in delivering the opinion of the court, cited with approval *State v. Field*, *State v. Scott*, and *City v. Alexander*, *supra*, and in the course of his remarks said: "The first position assumed by the counsel for the plaintiff in error, to invalidate the proceedings, is that the chapter whence the authority is derived is not a law of its own force, enacted by the law-making power of the land, but depends for its existence upon a vote of the people of the locality where it is sought to be made operative. * * * It is undoubtedly true that, under our form of government, laws must be enacted by the legislative bodies to which the legislative power is committed by the constitution. The legislators cannot divest themselves of the responsibility

of enacting laws by a reference of the question of their passage to their constituents. One of the earliest cases on the subject is *Barto v. Himrod*, 4 Seld. 483, where the legislature of New York framed a law concerning free schools. The legislature did not enact or adopt the law; but the tenth section of the act declared that the electors should determine by ballot, at the next annual election, whether the act should or should not become a law. There, it will be perceived, that the legislature merely proposed the law, and left its enactment to the people. The court of appeals held that the law, having never been passed by the legislature—the only body under the constitution that was competent to pass a law—it was void and of no effect. * * * Now, the legislature cannot propose a law, and submit it to the people to pass or reject it by a general vote. That would, indeed, be legislation by the people. But the proposition cannot be successfully controverted that a law may be passed to take effect on the happening of a future trust or contingency. The future event—the happening of the contingency or the fulfillment of a condition—affords no additional efficacy to the law, but simply furnishes the occasion for the exercise of the power. The law is complete and effective when it has passed through the forms prescribed for its enactment, though it may not operate, or its influence may not be felt, until a subject has arisen upon which it can act. In the case we are now considering, the act took effect with the other laws contained in the statutes. It was passed according to the prescribed forms designated in the constitution. Its enactment did not depend upon any popular vote, but parties to be affected by it were at liberty to accept the privileges granted, and incur the burdens and obligations it would impose, as their interest or will should dictate. If they elected not to avail themselves of its privileges, it did not in the least impair its force; it still stood a valid enactment on the statute book. If they organized under

it, they were entitled to the benefit of its provisions; but in either event, the law remained the same. There is no pretense, therefore, for saying that the law is objectionable because it depends for its efficacy on the vote of the people. This point must be ruled against the plaintiff in error."

That case has been grossly misconceived. The whole of the school law took effect and was passed at the same session. Among the chapters of that law was chapter 47. Sections 7, 8, 9, and 10 of that chapter went into immediate operation, according to the express terms of section 14. The other and prior sections of the chapter were only enacted in order to admit adjacent territory to be attached for school purposes to some city or town. The law, *as a whole*, stood and went into operation whether a vote were taken or not. The vote was a mere *permissive incident* in the execution of the law. The case of the *State v. Binder*, 38 Mo. 450, rested perhaps, upon considerations already adverted to in *State v. Field* and *City v. Alexander, supra*, and, for the reasons there stated, was not a delegation of legislative power, but a law authorizing the municipal corporation of St. Louis county, upon a vote taken to that effect, to pass an ordinance allowing the sale on Sunday of refreshments (distilled liquors excepted). The constitutionality of the law of 1857 was not touched upon, and the broad intimation is moreover given that the city of·St. Louis possessed the power to pass such an ordinance without the aid of such a law. The opinion of the judges of this court, reported in 55 Mo. 295, in reference to the *Township Organization Law*, rested also upon considerations already set forth in *State v. Field, State v. Scott, City v. Alexander*, and *State ex rel. v. Wilcox, supra*.

In *Lammert v. Lidwell*, 62 Mo. 188, this court again had occasion to consider the question now under consideration; that is, whether the act of March, 1873, it being "an act to prevent domestic animals from running at

large in counties which, by a majority vote, may decide to agree thereto," was a constitutional law, and it was held invalid. Wagner, J., who had delivered the opinion of the court in *State ex rel. v. Wilcox*, and had concurred in the opinion in 55 Mo., *supra*, delivered the opinion in that case. He said: "By the constitution of this state, the legislative power is vested in the General Assembly, composed of the senate and house of representatives. They must exercise the legislative authority in the enactment of laws, and they cannot delegate their trust. The legislature cannot propose a law and submit it to the people to pass or reject it by a general vote, for that would amount to legislation by the people. But a law may be passed which is complete in itself, to take effect in a future contingency, or upon the happening of an event."

The learned judge then gives instances where certain local or municipal matters might be submitted to a popular vote, citing *City v. Alexander*, and *State ex rel. v. Wilcox*, *supra*, and *Township Organization Law*, 55 Mo. 295, and then proceeds to say: "It may now be conceded as the established doctrine, that statutes creating municipal corporations, or imposing liabilities upon municipalities, or authorizing municipalities to incur debts and obligations, or to make improvements, may be referred to the popular vote of the districts immediately affected ; that is to say, the people of such districts may decide whether they will accept the incorporation, or will assume the burdens. This is the prevailing rule in reference to local measures. But in all these cases, the legislature had enacted a complete and valid law, according to the prescribed usages governing the passage of laws, and the happening of the contingency of the future event, which furnishes the occasion for the exercise of the power, gives no additional efficacy to the law itself. It derives its whole vigor and vitality from the exercise of the legislative will, and not from the vote of the

people. But nobody but the legislature can make or repeal a law."

After discussing and stating the substance of the authorities in *Barto v. Himrod*, 4 Seld. 483; *Rice v. Foster*, 4 Harr. 479; *Parker v. Commonwealth*, 6 Pa. St. 507; and *State ex rel. v. Court Common Pleas*, 36 N. J. L. 72, and giving his assent to the principles they announce, Judge Wagner further says : "When the people, through the constitution, delegated the law-making power to the legislature, it conferred an authority, and imposed a duty, which could not be exercised by any other body of men. Therefore, every law, to have any binding force or validity, must, when it emanates from the legislative body, have the form and character of a complete enactment. It must operate by virtue of the legislative authority, and not depend upon popular action, or the people's suffrages for its vitality. If the law is regularly enacted, according to the prescribed forms of legislative procedure, it may well be allowed to depend upon contingencies for its operation upon classes or localities, but it cannot be made to depend for its existence upon any other than the legislative will. Is the law we are now considering, in reference to the restraint of animals, a valid law, or is it a mere proposition to the people of certain counties to make it a law if they see proper to do so? It is very evident that it can have no existence or obligatory force unless the same be imparted to it by a vote of the people. The title to the act does not purport to be the title of a general law, or of a legislative enactment, but it declares that it is an act to prevent domestic animals from running at large in those counties which, by a majority vote, may decide to agree thereto ; not an act of the legislature, but an act of the counties which may in reality adopt it. The title is a fair index and exponent of the true intent and meaning of the law. The first section provides that the

county court of any county may submit to the voters the question of restraining domestic animals, and then it is declared in the second section that if a majority of the voters in any county is in favor of the restraint, then it shall be unlawful in that county for animals to run at large according to the provisions of the third section. The fourth section prohibits the county court from ordering a special election for the adoption of the law oftener than once in each year. In other words, this last section gives the voters of each county the authority, once in each year, to determine whether they will enact a law for their special benefit. If they decline, under the provisions of the first and second sections, to legislate on the subject, then the law has no existence."

From these quotations from the adjudications of this court, it will be readily seen that they are in entire harmony with each other. The rule to be deduced from them is plainly this: That in certain classes of cases, as already mentioned, relating to mere local or municipal objects, it is perfectly competent for the legislature, by a law complete in itself—one denouncing penalties for its violation—to submit to the people of certain localities to determine by their votes whether some small, minor regulation, incident to, but not necessary to, the *existence of the law itself*, shall be adopted. But if the law is not complete; if it has no self-enforcing penalty when it leaves the hands of the legislature; if it is a mere proposal to the people of certain localities to determine whether *certain printed matter* which appears on the statute books shall become a law or no, then such a proposal is a clear delegation of legislative power, and for that reason unconstitutional.

The long and short of the matter is this: That while the law may call the *vote of the people into existence, the vote of the people cannot call the law into existence. The law may authorize the vote,*

*but the vote cannot authorize the law.* Of course, the remark that the legislature may pass a certain law complete in itself, and submit certain incidents thereof to a popular vote—incidents not at all affecting the vitality or validity of the law itself—is subject to those constitutional restrictions as to local or special laws already noted. The rule announced in this state as to the character of laws which cross the boundary line defining the legitimate exercise of legislative power from that where such power is delegated is fully sustained by the great current of authority elsewhere.

In *Barto v. Himrod*, 8 N. Y. 483, Ruggles, C. J., said : "The act of 1849 does not, on its face, purport to be a law, as it came from the hands of the legislature, for any other purpose than to submit to the people the question whether its provisions in relation to free schools 'should or should not become a law' (sec. 10) ; and by section 14 the act was to become law only in case it should have a majority of the votes of the people in its favor. Without contradicting the express terms of the tenth and fourteenth sections, it cannot be said that the propositions contained in it in relation to free schools were enacted as law by the legislature. They were not law, or to become law, until they had received a majority of the votes of the people at the general election in their favor, nor unless they received such majority. It results, therefore, unavoidably, from the terms of the act itself, that it was the popular vote which made the law. The legislature prepared the plan or project, and submitted it to the people to be passed or rejected. The legislature had no power to make such submission, nor had the people the power to bind each other by acting upon it. They voluntarily surrendered that power when they adopted the constitution. The government of this state is democratic ; but it is a representative democracy, and in passing general laws the people act only through their representatives in the

legislature. * * * It is not denied that a valid statute may be passed to take effect upon the happening of some future event, certain or uncertain. But such a statute, when it comes from the hands of the legislature, must be law *in praesenti* to take effect *in futuro*. If the observations already made are correct, the act of 1849 was not such a statute. But if, by the terms of the act, it had been declared to be a law from the time of its passage, to take effect in case it should receive a majority of votes in its favor, it would nevertheless have been invalid, because the result of the popular vote upon the expediency of the law is not such a future event as the statute can be made to take effect upon, according to the meaning and intent of the constitution. * * * The event on which the act was made to take effect was nothing else than the vote of the people on the identical question which the constitution makes it the duty of the legislature itself to decide. The legislature has no power to make a statute dependent on such a contingency, because it would be confiding to others that legislative discretion which they are bound to exercise themselves, and which they cannot delegate or commit to any other man or men to be exercised. They have no more authority to refer such a question to the whole people than to an individual. The people are sovereign, but their sovereignty must be exercised in the mode which they have pointed out in the constitution." The law of that case is still the law in New York. *Bank v. Rome*, 18 N. Y. 38; *Bank v. Brown*, 26 N. Y. 467; *People v. Fire Ass'n*, 92 N. Y. 311.

In Delaware, the legislature passed an act, the first section of which provided: "That on the first Tuesday in April, 1847, the citizens of the several counties in this state shall decide by their votes whether or not the retailing of intoxicating liquors shall be permitted in said counties." And the law was held unconstitutional because of being a delegation of legislative power, Booth,

C. J., remarking: "The laws licensing the sale of spirituous and vinous liquors are valid laws, and must remain in full force until repealed or modified by the regular and constitutional exercise of the legislative power, by a law passed by the senate and house of representatives in general assembly met. No such law has been, or was intended to be, passed by the legislature. They purposely avoided it. They merely left the subject to the people of each county to decide by ballot, whether the license laws should be repealed or not, within such county; and until such decision should be made by a majority of the legal voters, the laws were to remain in full force. The people of each county were to act on the subject, and not the legislature. The license laws were to be repealed in a county, not by the will of the legislature, but by the will of a majority of the citizens who voted in such county, although it might be against the will of a majority of the citizens of the state; by the exercise of legislative power by the people of a county, which could not be done by the people of the state; by a law (falsely so-called) enacted and passed through the medium of ballot-boxes, and not by a law enacted by the senate and house of representatives of the state of Delaware in general assembly. The design and true character of the act of the nineteenth of February last, are to confer the functions of the legislature of the state upon the people of a county; to give them the means of exercising legislative power, by authorizing them to decide by their votes whether the retailing of intoxicating liquors should thereafter be lawful in their county. A law, when passed by the legislature, is a complete, positive, and absolute law itself, deriving its authority from the legislature, and not depending for the enactment of its provisions upon any other tribunal, body, or persons. It may be limited to expire at a certain period, or not to go into operation until a future time, or the

happening of a contingency, or some future event; or until some condition be performed.    Of this description are many of the laws of the general government respecting duties and imposts; and laws of our own state respecting private corporations, which latter are not to operate until some condition be performed.    *    *    * All such laws are complete and positive in themselves when they pass from the hands of the legislature, and are not to become laws by the creative power of other persons. But the legislature are invested with no power to pass an act, which is not a law in itself when passed, and has no force or authority as such, and is not to become or be a law until it shall have been created and established by the will and act of some other persons or body, by whose will, also, existing laws are to be repealed, or altered and supplied. The act of the nineteenth of February, 1847, is of this character. In a legal sense, it is not a law ; it is not complete and positive in itself.   It is not a rule prescribed by the supreme power of the state to its citizens enforcing some duty or prohibiting some act ; but was to become a rule only when enacted or sanctioned by the popular vote of a county ; and then to be a rule prescribed, not by the constitutional legislative power of the state, but by the power of the majority in a county over the minority.    Excepting the fifth section, the act of February last, in effect, is in the nature of a bill prepared and presented by the legislature of the state to the people of each county, to be enacted or rejected by them.    *    *    *    But the act of the nineteenth of February delegates the legislative power of the state to be exercised by the people of each county, not only in a single instance, but year after year.    By the fifth section, whenever one-fourth in number of the legal voters at the last preceding election in any county shall request the levy court to present the question of ' *License* ' or ' *No License* ' again to the people, it becomes the duty of the levy court to give public notice thereof ; and the

question is to be again decided by ballot on the next
succeeding first Tuesday in April; and so on, in every
year in which such written request shall be made.  By
the constitution of this state, the legislative power can-
not be called into action oftener than once in every two
years, except by the Governor upon extraordinary occa-
sions; and then to be exercised only by a senate and
house of representatives.  But the fifth section of this
act, transcending the constitution, authorizes a minority
of voters in each county to call into action every year
the legislative power on this subject, to be exercised by
the people of such county through a ballot-box; thus
actually annulling the constitution, and subverting our
form of government." *Rice v. Foster*, 4 Harr. 479.

The same conclusion is reached in Pennsylvania,
upon a similar statute.  *Parker v. Commonwealth*, 6 Pa.
St. 507; *Rice v. Foster*, *supra*, being cited with approval.
The claim is made that the case just cited has been over-
ruled by the more recent one of *Locke's Appeal*, 72
Pa. St. 491.  But it will be found on examination that
the latter case does not do this.  Agnew, J., said:
"When the law came from the halls of legislation it
came a perfect law—mandatory in all its parts, prohib-
iting in this ward the sale of intoxicating liquors without
license; commanding an election to be held every third
year to ascertain the expediency of issuing licenses, and,
when the fact of expediency or inexpediency shall have
been returned, commanding that licenses shall issue or
shall not issue.  Then, what did the vote decide? Clearly,
not that the act should be a law or not be, for the law
already existed.  Indeed, it was not delegated to the
people to *decide* anything.  They simply declared their
views or wishes; and, when they did so, it was the *fiat*
of the law—not their vote—which commanded licenses
to be issued or not to be issued."  Then, after comment-
ing on *Parker v. Commonwealth*, *supra*, he said: "If we
admit the fact that the law now before us was of this

character, an imperfect and unfinished act, a mere invitation to the people to issue their subsequent mandate, and to breathe into it all its vitality, and thus give to it all its validity and binding efficacy as a law, we might have to concede the conclusion that there was a delegation to the people of the power to legislate. But it is beyond cavil that when the act of 1871 left the halls of legislation it was a mandatory law in all its parts, and the only thing committed to the people was to vote for or against the issuing of licenses, and thereby supply the evidence of expediency. It acts *proprio vigore*, and is called into existence by no subsequent popular mandate. By its command the sale of liquors is forbidden, the popular vote is taken, and its effect declared."

The case of *State ex rel. v. Court Common Pleas*, 36 N. J. Law, 72, is cited as announcing a different rule than that announced in the state of Delaware. The act which came under review in that case by its express terms took effect immediately and repealed all inconsistent acts. It also forbade the selling without license of malt, vinous, and spirituous liquors in less quantity, etc., in the township of Chatham, declaring that any one who should sell without license should be deemed guilty of a misdemeanor and punishable by a fine, etc. It also contained sections which allowed the voters of that township to determine by ballots, marked "license" or "no license," whether license should be granted. The vote taken was against license, and Sandford, having presented a proper petition under the old law, and been denied license, applied for a mandamus to compel the issuance of a license. Upon this state of facts, Van Syckel, J., delivered the opinion of the court, holding the law valid. He said : "It must be conceded that this law can have no sanction if it is a delegation of the law-making power to the people of the township. If the right to declare what the law shall be in one case may be

referred to the people, the right to do so may be given in all cases; and thus the legislature may divest itself wholly of the power lodged in it by the fundamental law until by subsequent legislation it shall be resumed. It is also obvious that it is not competent to delegate to the people the right to say whether an existing law shall be repealed or its operation suspended. To say that what is now the law shall not hereafter, or shall not for a specified time, be the law, is in effect to declare the law to be otherwise than it now is, and is a clear exercise of the law-making power. The will of the legislature must be expressed in the form of a law by their own act. If it is left to the contingency of a popular vote to pronounce whether it shall take effect, it is not the will of the law-makers but the voice of their constituents, which moulds the rule of action. If the vote is affirmative, it is law; if in the negative, it is not law. The vote makes or defeats the law, and thus the people are permitted unlawfully to resume the right of which they have divested themselves by a written constitution, to declare by their own direct action what shall be law. The cases upon this subject, so far as they assert the principles above stated, have my entire concurrence. *Parker v. Commonwealth,* 6 Barr, 507; *Rice v. Foster,* 4 Harrington, 479; *Maize v. State,* 4 Ind. 342; *State v. Parker,* 26 Vt. 357; *Santo v. State,* 2 Iowa, 165; *Patterson v. Society,* 4 Zab. 385. The test will be whether this enactment, when it passed from the hands of the law-giver, had taken the form of a complete law. It denounces as a misdemeanor the selling of liquor without license. So far it is positive and free from any contingency. It left to the popular vote to determine, not whether it should be lawful to sell without license, but whether the contingency should arise under which license might be granted. * * * The leading cases of *Rice v. Foster,* and *Parker v. Commonwealth,* are distinguishable in principle from this. In these cases

the prohibition and penalty *were not denounced by the law itself, but by the popular vote. The selling of liquor was not pronounced to be unlawful; it was referred to the people to determine whether it should be restrained.* So in the law proposed to be passed at the last session of our legislature, ' the offence defined by the act could not be committed unless the voters of the town determined that licenses should not be granted.' But if this is construed as an act authorizing the township, by a majority vote, to prohibit the retail traffic in liquors, it may still be supported. The right of the legislature to grant the power of local government to municipalities is conceded, and it is immaterial whether the enactment conferring it is regarded as a declaration of the supreme legislative will, and strictly a law, or merely as a concession of a grant by the legislature, as the representative of the sovereignty of the people.''

It will thus be seen that this case asserts nothing to the contrary of other cases heretofore cited, and barring constitutional objections as to special or local laws, and as to regulating the affairs of counties, cities, etc., and of changing the charters of cities, I have no doubt that a valid local option law applying to the town of Trenton could have been passed as limited in the sphere of its operation as the one mentioned in New Jersey, and for precisely the same reasons. If the authority of cities to pass ordinances and laws is not, under the rules laid down in *State v. Field, supra,* a delegation of legislative power, then neither are further legislative enactments of like tenor and effect. Similar views of the unconstitutionality of such laws are well expressed in *Maize v. State,* 4 Ind. 342, Blackford, J., being on the bench. This case was substantially followed in *Mesheimer v. State,* 11 Ind. 482, to the extent of holding such laws unconstitutional; and *Rice v. Foster, Barto v. Himrod,* and *Parker v. Commonwealth, supra,* were approvingly cited. The case of *Groesch v. State,* 42 Ind. 547, does not

overrule any former decision.   The statute in that case was essentially different from any former one on the subject.  It was perfect and complete.  It denounced a penalty against selling liquor without license, and then provided how license might be obtained, which might be done by a majority of the legal voters signing a petition to that effect, etc., thus resembling very closely the New Jersey statute and our own "Downing Law."

Such laws as depend for their efficacy on the majority vote have also been held invalid in Iowa.  *Santo v. State,* 2 Iowa, 165;  *Geebrick v. State,* 5 Iowa, 491;  *State v. Beneke,* 9 Iowa, 203.  In *State v. Weir,* 33 Iowa, 134, the same point came up again for discussion, and Day, C. J., in delivering the opinion of the court, said:  "The act of 1870 makes it unlawful to sell ale, wine, malt liquors, or beer, except as provided in chapter 64 of the revision of 1860 ; and establishes the same penalties and mode of procedure for its violation as are provided in said chapter 64 of the revision for the unlawful sale of intoxicating liquors.  Section 3 of the act provides for the submission, at a general election, to the legal voters of a county, the question of the adoption of the provisions of the act, and enacts that 'if a majority of all the votes cast at such election in said county be "for prohibition," then, *and* not *otherwise,* shall the provisions of this act be in full force in said county from and after the first Monday in January next following such election.'  *  *  *  'And if a majority of the votes cast be "against prohibition," then, and in that case chapter 64 of the revision of 1860 shall remain and be in force in such county, and this amendatory act *shall be null and void in such county.'* Now, it is apparent that, by express declaration of the legislative will, no change is to be effected in the existing law of any county until its provisions are adopted by a majority of the legal voters at a general election.   If no vote be taken, chapter 64 of the revision remains in force.   If a vote be taken, and a majority of the votes

cast be against prohibition, the provisions of chapter 64 of the revision remain in force, 'and this amendatory act shall be null and void in such county.' Under section 1583 of the revision, the sale of beer is lawful. The act of 1870 makes the sale of beer unlawful. The effect of a vote in favor of the act of 1870 is to adopt a provision in direct conflict with section 1583, and hence to repeal it by necessary implication. In *Geebrick v. State, supra*, it is held that 'a law can no more be repealed than it can be made by the vote of the people.' The act of 1870 further provides : 'Section 2 of chapter 154 of the laws of the twelfth General Assembly is hereby repealed, so far as it relates to counties adopting the provisions of this act, but to none other.' It is apparent that this repealing clause can be vitalized only by the vote of the people. Without such vote it remains lifeless and inactive."

Looking at section 5 of the "Wood Law," it will be found possessing in its consequences every element of similitude and none of unlikeness to the statute of Iowa—the votes of a majority, in either case, causing the repeal or non-repeal of existing laws. The case of *Dalby v. Wolf*, 14 Iowa, 228, decides nothing to the contrary of the other cases from that state already cited, but cites two of the earlier cases with approval ; and the law was perfect and complete. In *State v. Wilcox*, 42 Conn. 364, the law was complete when it left the legislative hall, and was substantially the same as that passed upon in New Jersey, heretofore noticed.

The act passed upon in *Boyd v. Bryant*, 35 Ark. 69, prohibited, under a penalty, the sale of intoxicating liquors within three miles of any college, etc., and the act took effect in ninety days, etc. The fourth section of the act provided how the fact of the location of a college within the prescribed limits was to be ascertained ; this was by petition, signed, etc., and the law

was held constitutional, and properly so held, under previously cited authorities.

In California the rule against the delegation of legislative powers has been rigidly enforced. *Houghton v. Austin*, 47 Cal. 646. In 1874 an act was passed providing for a vote to be taken upon the question of "liquor license" or "no liquor license," and if the vote should be "against license," that, in that event, it should be unlawful and punishable by fine and imprisonment to sell, etc. The law was held unconstitutional, because of being a delegation of legislative power, McKinstry, J., saying: "It is urged, however, that for the legislature to enact that a law shall take effect, provided the people of the state, or of a district, shall vote in favor of it, is not to delegate the law-making power. This position has been upheld by courts of high character, but I think the decisions in which it has been denied are sustained by the better reasons. * * * But it does not follow that a statute may be made to take effect upon the happening of any subsequent event which may be named in it. The event must be one which shall produce such a change of circumstances, as that the law-makers, in the exercise of their own judgment, can declare it to be wise and expedient that the law shall take effect when the event shall occur. The legislature cannot transfer to others the responsibility of deciding what legislation is expedient and proper, with reference either to present conditions or future contingencies. To say that the legislators may deem a law to be expedient, provided the people shall deem it expedient, is to suggest an abandonment of the legislative function by those to whose wisdom and patriotism the constitution has intrusted the prerogative of determining whether a law is or is not expedient. Can it be said in such case that any member of the legislature declares the prohibition or enactment to be expedient? *Ex parte Wall*, 48 Cal. 279.

It is claimed that the case just cited was overruled by that of *People ex rel. v. Nally*, 49 Cal. 478. This is an error. The subject there discussed was whether an act was valid which directed a vote to be taken in a certain county, whether another county was to be dismembered, a portion of it annexed to the county first named, and a portion to another county, and the act was held valid, on the ground of its being a *local* statute, a matter of "*purely local concern*," and the case of *Ex parte Wall* was distinguished. In Texas, upon a similar act as that mentioned in 48 Cal. *supra*, a similar ruling was made.

In Massachusetts, a statute was held valid which permitted cities to determine by vote whether liquors should be sold therein. But in that case the matter was treated as a local police regulation within that class of powers which the legislature could bestow on *cities* by express legislative enactment, to be exercised either by vote of the city council, or by a vote of the inhabitants. *Commonwealth v. Burnett*, 108 Mass. 27. But it is to be observed that the statute there was complete and perfect. In *State v. Noyes*, 34 N. H. 279, a statute in regard to bowling-alleys in cities was upheld on the ground of its being in the nature of *local* legislation, such as the legislature might authorize cities to pass, or might, in the first instance, pass directly, *provided such local regulations were consistent with the general laws of the state.*

The case of *People ex rel. v. Reynolds*, 10 Ill. 1, related merely to the division of an old county and the formation of a new one, which division was left to be decided by a majority vote of those directly interested, and this ruling was correct on the rule laid down in *State v. Scott*, 17 Mo. 521. The law in that case, as well as that of *People ex rel. v. Salomon*, 51 Ill. 37, was complete, and was so stated to be in the last-named case, which was one in regard to levying a special tax for the

improvement, etc., of South Park. Whether such tax was to be levied was made dependent on the acceptance of the act manifested by a majority vote, etc., and the act was held valid. In *Erlinger v. Boneau*, 51 Ill. 94, the court seems to have gone further and upheld a stock law which was not "to be in force until the same shall be ratified by a majority vote of the people of the county."

*Alcorn v. Hamer*, 38 Miss. 751, was one involving the constitutionality of a levee tax, the law authorizing the same submitting to the voters of the tax district the question of levying the tax. That was done by the first section of the act. But by a subsequent section of the same act provision was made "for the assessment and collection of a tax, in certain named counties in the levee district, over and above the tax provided for in the first section, and directs its appropriation." In an able discussion of the subject, Smith, C. J., said, in the course of his remarks approvingly citing the cases of *Rice v. Foster, Parker v. Commonwealth*, and *Barto v. Himrod, supra*, but he distinguished those cases from the one he was discussing, and then said : "These cases, as we understand them, and as they have since been interpreted, especially by the courts in Pennsylvania and New York, do not hold the doctrine that, where the act is complete in itself, and goes into effect as a law, though the execution of some of its provisions may depend upon the popular vote of a district or county, is void, upon the ground that there has been a delegation of the legislative power to the people of the district or county, who are thereby authorized to vote, but that they simply lay down the principle that an act which is a mere legislative preparation, plan, or project of a law, is void on that ground. * * * Was, then, the act in question an expression of the legislative will agreeably to the forms of the constitution ? Did it receive its final sanction from that will, or did it, so far as the tax is

concerned, claim its force and efficacy as a law from the votes of the electors of the levee district? In most of the provisions of the act it was mandatory. The assessment of the tax was positive and unconditional, and ample provision was made for its collection. The act made provision for the appointment of officers charged with the administration of the fund arising from the tax, and prescribed the manner in which that fund was to be applied; and by express provision, the act went into force from the date of its passage. It had all the attributes of a law. The act was complete, decisive, and final when it left the hands of the legislature. The power to enact a law of necessity includes the right to determine the conditions upon which, in a given case, the law is to come into operation. Hence, when there has been no attempt to surrender the legislative function, or to associate another power in the enactment of a law, it would, at the least, be absurd to hold that an act was invalid for the reason that its operation was to be defeated or suspended by the happening of the prescribed contingency. The right conferred upon the electors of the district, to determine that one of its provisions should not be carried into effect, was as clearly ascertained and as much fixed by the will of the lawmaking power as any provision contained in the act. It seems, hence, too clear for controversy, that the act did not delegate to the electors the right to pass, or even approve it. On the contrary, the vote of a majority against the collection of the tax can only be regarded in the nature of a condition subsequent, which might defeat, but which was never intended to confer upon the act validity, as an expression of the legislative will. It was the act itself which made the vote and prescribed the consequences to result from it. The proviso to the first section seems to have been misunderstood, as it was in the argument assumed that the vote of the majority of the electors was essential to give effect to the pro-

visions assessing the tax. It appears to us that the clear and manifest meaning of the proviso is exactly the reverse. A majority of the electors might defeat the collection of the tax, and thus render the act, *as to one of its provisions,* inoperative ; but upon no principle of sound logic can it be held that the majority vote was intended to give validity as a law to the provisions by which the tax was assessed. It was designed to prevent the execution of a law, which, by express declaration, had previously gone into operation. The act contains no provision that, if no election should be held, it should, in respect to the tax, be defeated. It follows, therefore, with absolute certainty, that it would have remained valid and operative, as a law, if there had been no election held or no vote given." That case has been cited as announcing a principle which upholds the "Wood Law." With what justice this claim is made can easily be seen.

*Bull v. Read,* 13 Gratt. 78, held an act valid which provided for a system of free schools in a particular district in a county, and the levying of a tax, and left it to a majority of the voters to determine whether the act which affected their own private and local interests should go into effect. But, in that case, those of *Rice v. Foster* and *Parker v. Commonwealth, supra,* were disapproved. It would seem that the Virginia case might, perhaps, be upheld upon considerations heretofore noticed, and that no necessity existed for any view in conflict with the cases cited therein.

Under a former charter of the city of Rochester, Minnesota, the common council were authorized to grant licenses for the sale of liquors, and might prohibit their sale by fine and imprisonment. By amendment to the charter the granting of licenses was remitted to the voters of the city, and if prohibited in this way, then such sales should be punished, etc. And the amend-

ment was upheld for reasons similar to those given in *Commonwealth v. Bennett, supra. State v. Cooke,* 24 Minn. 247.

An act conferred power on the county judges to grant licenses to sell liquors, if the majority of the freemen, at annual town meetings, should, by their votes, so determine. Another section of the act imposed a penalty for selling without licenses, and the act was held valid. The then recent cases of *Rice v. Foster,* and *Parker v. Commonwealth, supra,* were discussed, and held not to apply, Kellogg, J., saying: "Was not our statute a law in itself when passed by the legislature? Has it not the force and authority of law, independent of any action of the people? Can it be said that, before it receives such force, it is to be created and established by the people? We are entirely satisfied that the law of 1846 is subject to none of these objections. The law was complete in itself when passed by the legislature, and did not require the creative power of the people, or of anybody, to give it vitality or force. The second section of the statute imposed a penalty upon any person who should deal in the sale of distilled spirituous liquors without a license therefor, as provided in the statute. This amounts to an implied prohibition of such sale without a license. *Roby v. West,* 4 N. H. 285. If the people had never voted upon the question, as provided by the statute, the only consequence would have been that licenses could not have been obtained ; *the statute would have remained in force,* and consequently those who engaged in the traffic would incur the penalty imposed by the statute." *Bancroft v. Dumas,* 21 Vt. 456. In another case in the same state, it was held to be competent for the legislature to prescribe that a law should go into effect on the second Tuesday in March, 1853, but with the proviso that the meetings of freemen should be held on the second Tuesday of February, 1853, and that the law should take effect in

March or December, 1853, accordingly as the vote should be "yes" or "no." *State v. Parker*, 26 Vt. 357. And it was ruled that a popular vote was as valid a contingency as any other.

In Wisconsin, an act was held valid which established a board of public works in the city of Milwaukee, if accepted by the legal voters of the city, at an election to be held, etc. But this was so ruled because it was a mere matter of *local and municipal concern. State ex rel. v. O'Neill*, 24 Wis. 149. In *Smith v. City of Janesville*, 26 Wis. 291, much broader ground was taken, and a law held constitutionally valid which affected the people of the *whole state*, which, by its terms, was to take effect only after it should be approved by a majority of the popular vote at an election, and the former case was cited as authority.

In a later case, the disposition is evinced to be more conservative. Sections 8 and 9 of the act passed upon were as follows :

"Section 8. The owner or keeper of any dog or dogs, which shall have wounded, maimed, or killed any cattle, horses, sheep, or lambs, or injured any person, shall be liable to the owner or legal possessor of such cattle, horses, sheep, or lambs, or to the person injured, in all damages so done by said dog or dogs, without proving notice to the owner or keeper of such dogs, or knowledge by him that his dog was mischievous, or disposed to kill or worry sheep ; and all laws conflicting with this section are hereby repealed.

"Section 9. The county board of supervisors of any county, at their first meeting in any year, shall have power and are hereby authorized, by a vote of a majority of all the members-elect of said board, to increase or diminish the sum set opposite the names of owners of dogs, as provided for in section 2 of this act, or at the said meeting by the said vote to determine whether or not, during the then current year, the said

county shall be exempt from, or shall be governed by, the provisions of this act; and said determination shall be binding on said county until reversed by said county board by a majority of the members-elect of said county board." The remainder of section 9 related solely to the city and county of Milwaukee, and was unimportant in that case.

On that occasion Lyon, J., said: "We are now to determine whether the legislature has power to authorize county boards of supervisors to exempt their respective counties from the provisions of section 8. The constitution (art. 4, sec. 1) ordains that 'the legislative power shall be vested in a senate and assembly.' Those bodies constitute the legislature. It is a settled maxim of constitutional law that the power thus conferred upon the legislature cannot be delegated by that department to any other body or authority. Cooley on Const. Lim. 116. Yet it is undoubtedly true that in matters *purely local and municipal* the legislature may enact conditional laws, and refer it to the people or proper municipal authorities to decide whether such laws shall or shall not have force and effect in their respective municipalities. The cases which sustain this power are numerous. *The State v. O'Neill*, 24 Wis. 149, is one of these. In principle, the same power is exercised in the numerous laws enacted by the legislature giving to municipalities the power to establish by-laws and ordinances in respect to municipal matters. Section 8, however, does not relate to municipal affairs, but it seeks to change a rule of the common law pertaining to a matter of general interest. As well might the legislature authorize the board of supervisors of a county to abolish in such county days of grace on commercial paper, or to suspend the operation of the statute of limitations. Such legislation is clearly within the restriction on the power of the legislature to delegate

its authority, and is, therefore, inoperative and void."
*Slinger v. Henneman*, 38 Wis. 504.

In Maryland an act was held valid which left it to
the voters of certain named counties to determine
whether intoxicating liquors should be sold or not—the
act to take effect immediately after the vote was ascer-
tained. *Fell v. State*, 42 Md. 71. The decision applies
the rule *stare decisis*. There is, however, an able dissent
by Bowie, J.

In *Commonwealth v. Weller*, 77 Ky. 218, an act in re-
lation to Bullitt county of a similar nature was held valid,
and the case is made largely to turn upon the ground
that it is merely a *local law*, and citations are made of
authorities relating to school districts voting taxes, cities
and counties voting subscriptions, counties voting to
organize new counties, etc.

*Hill v. Mayor*, 72 Ga. 314, decides that the city of
Dalton had charter power to pass an ordinance forbid-
ding the sale of liquors. In *Caldwell v. Barrett*, 73 Ga.
604, an act was held constitutional which was a *purely
local* act, made dependent for its validity and for its
penalty on a majority vote. The subject is evidently
but lightly considered. No authorities are cited except
a reference to Cooley's Const. Lim. 748, 749, where such
questions as location of county sites, municipal charters,
etc., are discussed. In the opinion it is very naively
said : "*If the constitution, the organic law of the
state, has been made to depend upon the vote of the
people, it is not easy to perceive why a local law, an act
affecting a particular community, should not be deter-
mined by a vote of the people of that locality.*"

I have thus, at the expense of both space and
brevity, set forth the present state of the law on the
point in hand. The importance of the subject de-
manded as much. It will easily be seen that the former
rulings of this court are sustained by a great preponder-
ance of authority and an equal preponderance of reason.

And the rule of this court, with its well-known exceptions, established for *thirty-four years*, should not be lightly departed from, even if founded on reasons less cogent than it is. *It is a rule promotive of wholesome and conservative legislation*—a rule which demands the exercise of that legislative judgment and discretion, for the exercise of which members are sent to the halls of legislation. It is a rule which rigidly applies the maxim, *delegatus non potest delegari;* a rule which holds as inapplicable in the affairs of representative government the common-law maxim of *qui facit per alium, facit per se;* a rule which denies that the act of the voters is the act of the legislature ; a rule which, as far as human rules can, enforces an observance of that sacred trust which pertains to the office of a legislator, and sternly forbids, as well as prevents, the responsibilities of that office from being shirked, and its duties and obligations from being shifted on irresponsible shoulders.

If the ''Wood Law'' be examined in the light of that rule, and of the authorities cited from our own reports, as well as numerous others elsewhere, it must be apparent that it *possesses not one of the attributes of a valid law.* It has nothing mandatory or prohibitory about it. It is a *mere invitation* to the people to say whether the *proposal* which it contains meets with their approval. The whole act, from its title downwards, shows that, until another will was superadded to the legislative will, the act did not have, and was not intended to have, a shred or patch of vitality or validity about it. *Its legislative birth took place when the election took place. Reject the election and you destroy the law.* I do not deny but that a local option law could be passed, one that would repeal existing laws and denounce heavier penalties than they do against the sale of intoxicating liquors, and leave the *mere incident* of allowing the people by their votes to permit or to

deny the issuance of authority for the sale of such liquors; but, most certainly, such a law must be perfect and complete before it leaves the legislative halls. It must stand on its own independent foundation, bear with it its own self-enforcing penalties, and rest not for its validity on the adventitious aids of the votes of majorities.

VIII. It is said that there is no distinction between the result of a vote prohibiting the sale of liquor in a town or county and the result of a vote for the removal of a courthouse, or, the subscription to stock, etc. The distinction is just this: In the latter class of cases, the act of voting is the exercise of a right pertaining to local affairs, and falling within the exceptions already mentioned. In the former, it involves the concession of the power to *enact a penal statute under which the citizen may be indicted and punished.* If this simple statement does not show the distinction, no amount of argument can.

IX. I regard the "Wood Law" as open to another very grave constitutional objection. It assumes the character of an *"irrepealable law."* Of such laws Judge Cooley says: "Similar reasons to those which forbid the legislative department of the state from delegating its authority will also forbid its passing any irrepealable law. The constitution, in conferring the legislative authority, has prescribed to its exercise any limitations which the people saw fit to impose, and no other power than the people can superadd other limitations. To say that the legislature may pass irrepealable laws is to say that it may alter the very constitution from which it derives its authority; since, in so far as one legislature could bind a subsequent one by its enactments, it could in the same degree reduce the legislative power of its successors; and the process might be repeated until, one by one, the subjects of legislation would be excluded altogether from their control, and the constitutional pro-

vision that the legislative power shall be vested in two houses would be, to a greater or less degree, ineffectual." Cooley Const. Lim. (5 Ed.) 149.

According to section 7 of the act, the result of the vote determines the law for that locality for four years, to be reënacted in the same way, *toties quoties*, the four years limit expires. If the legislature could not in direct terms give such a law such a lease of immortality, can the people by their votes do more? But it may be said that section 7 may be rejected and the residue of the act be left valid and intact. Sometimes this may be done. In such instances the valid ·may stand and the invalid fall. Looking at this entire act, however, and considering, as we may, its legislative and current history, it seems difficult to entertain any other opinion than that it was adopted by the people of different localities as a settlement for four years, at least, of the question agitating the public mind, and that, but for the belief that a settlement for that period was effected by their votes, the act would not have enlisted majorities either for or against it. In such cases as these, where the act is passed as an *entirety*, the invalid is so blended with the valid, that both must perish together. *Slinger v. Henneman*, 38 Wis. 504; Cooley Const. Lim. 213; *Warren v. Mayor*, 2 Gray, 84; *Slauson v. City*, 13 Wis. 398; *State ex rel. v. Dousman*, 28 Wis. 541; *State ex rel. v. Commissioners*, 5 Ohio St. 497; Sedg. on Stat. and Const. Law, 414; *Campau v. Detroit*, 14 Mich. 276; *Lathrop v. Mills*, 19 Cal. 513.

X. If, as seems to me is quite obvious, a general law could have been passed to accomplish the ends desired by the one being discussed, then such a law should have been passed; and this, under the plain terms of the constitution, it was the express duty of the legislature to do. And whether this could have been done is made a judicial question, and thus open to review by the courts. Const., art. 4, sec. 53.

XI. Even if a general law on the subject could not have been passed, this would not authorize a local or special law to be passed, save in the precise mode pointed out by the constitution.

To recapitulate :

1. The act is unconstitutional, because incomplete and having no sanction when it left the hands of the legislature, and was, therefore, a delegation of legislative power.

2. Unconstitutional, because it suspends the operation of general laws in particular localities.

3. Unconstitutional, because a local or special law, not passed as provided in the constitution in respect to such laws.

4. Unconstitutional, because it operates as a partial repeal of a general law, and thus converts the general law into a local or special one.

5. Unconstitutional, because an irrepealable law, and it is apparent from the law itself, and from its legislative and current history, that it would not have been adopted but as a whole, and but for such irrepealable clause.

6. Unconstitutional, because it varies the punishment inflicted, *for a crime against the state* by a vote of the majority of the people of particular localities.

7. Unconstitutional, because it thus denies to the citizens of certain localities in this state "the equal protection of the laws," and in doing so violates the first section of the fourteenth amendment of the federal constitution.

8. Unconstitutional, because it violates section 53, article 4, of the constitution, which forbids the legislature, by a local or special law, to regulate the affairs of counties, cities, etc., or to change the charter of cities.

9. Unconstitutional, because a general law could have been passed.

Some weeks ago, the foregoing dissenting opinion,

with slight modifications, was submitted to my associates, for their consideration. This will account for the shape in which my views are therein presented. On Friday last, the prevailing opinion was read and adopted. The short time I have for reviewing that opinion and for preparing these remarks, in order that my views may be submitted simultaneously with the opinion of the court, must be my excuse for making, in a somewhat hurried manner, my comments thereon. The assertion made, and set forth at large in the majority opinion in reference to the presumptive validity of legislative acts, I shall not waste time to discuss. I as readily accept its general correctness as I would similar observations respecting the multiplication table. The question here is, not whether the legislature generally conforms its enactments to constitutional requirements, *but whether it has done so in this particular instance.*

I. Respecting the "Wood Law" being a delegation of legislative power, I have at much pains given a *résumé* of the authorities on that subject. I maintain its absolute correctness. Though *Locke's Appeal,* 72 Pa. St. 491, makes mention in the *head notes* that *Parker v. Commonwealth* is *overruled,* the *opinion itself* shows just the *contrary.* Indeed, the second quotation I have made from that opinion *pictures with anticipatory fidelity* the "*Wood Law.*" And, on examination of the other authorities I have cited from our sister states, it will be found that a majority of them are in entire accord with those of this court. Thus Pennsylvania, New Jersey, Delaware, Indiana, Iowa, New York, California, Connecticut, Mississippi, and Texas, and to this list may be added the case of *Bancroft v. Dumas,* 21 Vt. 456 ; and the case of *Slinger v. Henneman,* 38 Wis. 504, bears a very close resemblance to *State v. Field, supra.* Arrayed against this list of states are those of Maryland, Kentucky, Georgia, Illinois, and the case of *State v. Parker,* 26 Vt. 357. I do not regard the authorities cited

from Minnesota, Massachusetts, or New Hampshire as at all opposed to the doctrine of *Lammert v. Lidwell, supra*. Nor, for similar reasons, do I think *State ex rel. v. O'Neill*, 24 Wis. 149, announces a rule at variance with that case; and the case of *Smith v. Janesville*, 26 Wis. 291, may be held as greatly shaken by the later case of *Slinger v. Henneman, supra*. The case of *Bull v. Read*, 13 Grattan, 78, was perhaps correctly decided, though, as I think, upon incorrect reasoning. I have thus grouped the authorities *pro* and *con.* on the point in hand, and will simply reiterate the observation, made elsewhere, that the great preponderance of reason as well as authority is with the rulings of this court as heretofore made.

Cases cited from our own reports in reference to powers conferred upon municipal corporations, either by means of their charters or by direct local legislation, and cases where authority is given by a complete act to cities, counties, etc., to subscribe stock to railroad corporations, authority to the citizens to organize new counties or school districts, etc., rest upon their own peculiar considerations, and give no sanction to the idea that legislative power has been delegated in those instances, as I have heretofore pointed out.

The "Wood Law" has been compared to the "Downing Law," and it is claimed that if the former is invalid, as being a delegation of the legislative power, so also is the latter. I attach no importance to the *method*, in either instance, whereby license is to be granted; this may well be done by the votes of the taxpayers, or by their signatures to a petition to the same effect. But, right here, this marked distinction between the two acts supervenes. Ninety days after the adjournment of the legislature, the "Downing Law," its penalties and its punishments were full fledged, and went into immediate and active operation in every county in this state against any violator of that law. Not so with the "Wood Law;" it has neither prohibitions, penalties, nor punishments

until a majority of the voters do so decide. And though the majority opinion declares that the latter law went into effect ninety days after the adjournment of the legislature, this assertion meets with contradiction by the very face, terms, and conditions of the act itself. Section 36, of article 4, of the constitution declares that "no law shall take effect or go into force until ninety days," etc., thus leaving it to the legislature when, *after* that period, a given law shall take effect. The only prohibition is against the law taking effect *prior* to the expiration of ninety days. This point is too clear for argument. In concluding my remarks under this head, allow me to observe that on all hands it is conceded that an act may be passed which will be a delegation of legislative power. If the "Wood Law" is not faulty in this particular, permit me to ask this test question : *How shall an act be formed, framed, or fashioned which shall be vitiated by such a fault?*

II. In relation to the additional authorities cited in the majority opinion in regard to what is a general law, and what is a local or special law, it suffices to say that they are in entire harmony with *State v. Tolle,* 71 Mo. 645, and *State ex rel. v. Hermann,* 75 Mo. 340, announcing "that a statute which relates to persons or things as a class, is a general law, while a statute which relates to particular persons or things *of* a class, is special." The "Wood Law" clearly falls within the latter denomination ; it singles out those "particular persons of a class," to-wit, those dram-shop keepers residing in certain localities, and upon them it inflicts penalties from which others in the same class are exempt.

III. The majority opinion industriously avoids ruling the point whether the "Wood Law" operates as a repeal of the "Downing Law." Counsel for those who were respondents in the lower court exhibit a similar reticence on the same point. And any ruling is also avoided as to whether the druggist and pharmacist law

is repealed in counties where the "Wood Law" is in vogue. As I have heretofore pointed out, it is wholly immaterial which horn of the dilemma be taken. If it be ruled that the "Wood Law" operates as a partial repeal of a general law, to-wit, the "Downing Law," and of the druggist and pharmacist law, etc., then, by so doing, it indirectly enacts a special or local law by the partial repeal of a general law, and thus violates section 53, of article 4, of the constitution. If, on the other hand, those general laws are not partly repealed, but only *suspended*, such suspension is equally invalid, because not a *general* suspension. The intimation is, however, given that a partial repeal of the "Downing Law" has occurred in certain localities. If so, then for the same reason a partial repeal of the druggist law in such localities has also occurred. In order that one law should repeal another, it is not necessary that the former should do this *in terms*. It is sufficient that the repugnancy between the two acts is such that both cannot co-exist. This precise point was so ruled at the present delivery. *State ex rel. v. Dolan*, *ante*, p. 467. I have already cited authorities in a former part of this opinion showing that a partial repugnancy accomplishes a partial repeal. This necessarily follows from the premise that a total repugnancy accomplishes a total repeal.

IV. The majority opinion also declines to decide whether section 9 of the "Wood Law," which denounces greater punishments against selling liquor without license than does the "Downing Law," is constitutional. This point is directly in issue, and cannot be fairly evaded, nor put off "*till a more convenient season;*" for if the "Wood Law," in certain localities, accomplishes the repeal of the "Downing Law," it does this *in toto*. In those localities no shred or patch of the "Downing Law" is left in existence. This being the case, one of two things must needs follow : Either that a violator of the "Wood Law" must receive greater

punishment for selling liquor without license than he would under the old law, or *else there is no punishment provided for his offence!* This bare statement carries with it its own argument, and furnishes those whom it may concern something in the nature of a solid, upon which they may ruminate at their leisure. Besides, it is inconceivable that the "Wood Law" would have been enacted *without a penalty* attached as incident to its violation. The authorities I have previously cited conspicuously show that, when it is apparent that a law is enacted as an *entirety*, as a *system*, then a rejection of a part of the system rejects the whole law. So that this state of affairs brings other dilemmas to confront the upholders of the validity of the "Wood Law:" First, either that section 9 of that law is unconstitutional because of inflicting greater punishments than are inflicted for like offences in other localities, thus denying to those upon whom such punishments are inflicted the "equal protection of the laws," or else, second, that, being thus unconstitutional, it is to be stricken out of the "Wood Law" on that account, and thus leave no punishment whatever to be inflicted upon those who violate its behests; or else, third, that section 9, by reason of being a portion of a system which would not have been adopted but as a whole, then that section being invalid, the whole act must perish. If there is any loophole of escape from one of these alternatives, I am unable to perceive it.

V. I have shown that, according to the terms of the statute, it is to last, where adopted, *for four years*. My associates confess their inability "to understand the ground on which this claim is based." To my mind it is very plain that neither the legislature nor the people, nor both combined, can enact a law which will stand four years; yet this is just what the "Wood Law" does. Of course, if a law can be made to stand for four years, it may for forty or for four hundred. An examination

of the authorities I have cited, will, as I think, dispel any doubt on this point which my associates entertain.

VI. I will conclude my observations on the majority opinion with some reflections upon the precedent it establishes, and the consequences which flow from it. As heretofore mentioned, our constitution wisely provides for the enactment of *general* laws; commands that they be enacted wherever they can be made applicable; makes this a judicial question, and refuses to trust it to the judgment of the legislature. Not satisfied with this, that instrument abounds with other similar restrictions forbidding all evasions of its stringent prohibitions; among others that of cutting down a general law by its partial repeal, and thus transforming it into a "special or local law." That the "Downing Law," and other cognate general laws, have been thus cut down, I think has been conclusively shown. But under the ruling of this court, this amounts to nothing, and does not affect the validity of any one of the other general laws, nor of the act in question. The yet unborn consequences which will attend this ruling may well give pause to every reflecting mind. Under its operation, there is no boundary and no limit to the delegation of legislative power. Under its operation, similar so-called general laws may be enacted, whereby our statute books will become as motley as Joseph's coat, and still the constitution be not violated.

Under its operation, the laws respecting commercial paper, limitations of actions, the punishment of crimes, etc., may vary with different localities and still be held general laws, and constitutional. As an *individual*, I am willing to accord due meed of praise to those who, by their well-meant efforts, seek to remedy the evils incident to the abuse of intoxicants; but, as a *judge*, I can give those efforts no recognition until they assume the shape of a valid law. For these reasons, I am constrained to dissent *in toto* from the majority opinion.